**In re Bill J. EADS and Patsy Eads, Debtors.**

**Robert HAWKINS, Chapter 7 Trustee, Plaintiff,**

v.

**Bill J. EADS, individually and as successor or representative of Patsy Eads, deceased; Don Bricker Construction, Inc., a California Corporation; Oakhurst Meadows Estates, a California limited partnership; and Don Bricker, individually, Defendants.**

**DON BRICKER CONSTRUCTION, INC.; Oakhurst Meadows Estates; and Don Bricker, Third–Party Plaintiffs,**

v.

**John DUFFY, individually; and GTY & Associates, Inc., a California Corporation, Third–Party Defendants.**

**Bankruptcy No. 91–20795–C–7. Adv. No. 91–2176.**

United States Bankruptcy Court, E.D. California.

Dec. 31, 1991.

---

Arthur G. Woodward, Downey, Brand, Seymour & Rohwer, Sacramento, Cal., for GTY & Associates, Inc.

Allen L. Michel, Michel, Cerny & Mirman, Santa Monica, Cal., for John Duffy.

Theodore R. Forrest, Jr., Forrest & McLaughlin, Fresno, Cal., for Don Bricker and Don Bricker Const., Inc.

Jane Dickson McKeag, Michael S. McManus, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for Oakhurst Meadows Estates.

## MEMORANDUM DECISION DENYING MOTION TO DISMISS

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This motion to dismiss a third-party complaint poses the question of whether the supplemental jurisdiction statute, 28 U.S.C. § 1367, may be invoked in connection with federal jurisdiction over civil proceedings arising under the Bankruptcy Code or arising in or related to bankruptcy cases.[1] 28

---

1. 28 U.S.C. § 1367:
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
 (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
 (1) the claim raises a novel or complex issue of State law,

U.S.C. § 1334(b). I conclude that the supplemental jurisdiction statute applies in bankruptcy adversary proceedings and, subject to the court's discretion to decline to exercise such jurisdiction, permits defendants to assert third-party claims on theories of ancillary and pendent jurisdiction, which are components of supplemental jurisdiction.

This conclusion is limited to a statement of the subject-matter jurisdiction of the district court, of which the bankruptcy court is a unit,[2] over third-party claims. It does not address whether a bankruptcy judge may preside over the trial.[3] Moreover, the determination to exercise the discretion to entertain the third-party claim · remains open and permits the court to relinquish jurisdiction later in the case.

## Nature of the Litigation

The complaint alleges an age-old fraud—that defendants siphoned a secret profit by selling property of the bankruptcy estate through a strawman at a fictitiously low price.[4] In the third-party complaint, the three nondebtor defendants allege that two professionals they employed in connection with the offending transaction are liable on theories of indemnification, breach of contract, legal malpractice, and fraud. The third-party defendants contend there is no federal subject-matter jurisdiction over these claims.

## Facts

Accepting the factual allegations of the complaint and of the third-party complaint as true, Bill J. Eads and Patsy Eads ("the Eads"), as chapter 11 debtors in possession, agreed with Don Bricker to sell real property ("Quail Meadows") to Oakhurst Meadows Estates ("OME"), a California limited partnership, to be formed by Bricker for purposes of the transaction. Don Bricker Construction, Inc., would be general partner of OME.

The market value of Quail Meadows was about $1.25 million. Bricker agreed to pay the Eads a combination of: (1) $650,000 cash ($450,000 to the bankruptcy estate and $200,000 to the Eads "outside of bankruptcy"); (2) a continued ownership interest in the property in the form of 10 percent of OME's partnership units; (3) future payments of consulting fees by OME; and (4) manufacturer's rebates on homes that would be installed on the real property.

The Eads obtained bankruptcy court approval to sell Quail Meadows for $450,000 to purchasers other than OME. Such approval was required because Quail Meadows was property of the estate. The matter was heard by the Honorable Eckhart

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
(d) The period of limitations for any claims asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claims under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.
(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

2. The Judicial Code, at 28 U.S.C. § 151, defines the relation of the bankruptcy court to the district court:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.
28 U.S.C. § 151.

3. Trial responsibilities are allocated between bankruptcy judges and district judges by 11 U.S.C. § 157. The parties can, by unanimous consent, agree to have a bankruptcy judge handle matters that otherwise would require a district judge.

4. The Ninth Circuit dealt with a similar scenario in *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics America Corp.)*, 926 F.2d 912 (9th Cir.1991).

Thompson, who was not apprised of the true price or of the agreement with Bricker.

Thereafter, the Eads, as debtors in possession and acting under color of the order approving the sale, entered into a written contract to sell Quail Meadows for $450,000 to OME. Seven days later, OME executed a $200,000 promissory note in favor of the Eads.

The Eads conveyed title to OME on October 27, 1989. The bankruptcy estate received $450,000. The Eads, without the knowledge of the bankruptcy court or of the creditors, also received: (1) the $200,000 note, which they exchanged for $89,000 cash and 6 percent of OME's partnership units; (2) 10 percent of OME's partnership units as originally agreed with Bricker; and (3) the right to receive future consulting fees and manufacturer's rebates.

When all of this came to light, a chapter 11 trustee was appointed to displace the Eads. He caused the case to be converted to chapter 7 three months later and became the chapter 7 trustee. He is the plaintiff in this adversary proceeding.

### The Complaint, Cross–Claims, and Third–Party Complaint

The chapter 7 trustee brought this adversary proceeding against the Eads and against Don Bricker, Don Bricker Construction, Inc., and Oakhurst Meadows Estates (the "Bricker defendants") seeking: (1) either to avoid the sale or to recover damages under 11 U.S.C. § 363(n); (2) punitive damages under section 363(n); and (3) to avoid and recover the transfers of real property to OME and of money and OME partnership units to the Eads under 11 U.S.C. §§ 549–550. The complaint has been amended to add a count objecting to a bankruptcy discharge for the Eads under 11 U.S.C. § 727. Patsy Eads has died; Bill Eads has been substituted as her representative.

The Bricker defendants cross-claimed [5] and filed a third-party complaint naming Bricker's lawyer ("Duffy") and his financial planner ("GTY") as third-party defendants.[6] They want to be indemnified for any sums that the plaintiff may recover from them. Their indemnification claims are founded on theories of naked indemnification, breach of contract, and legal malpractice. They also seek actual and punitive damages on a fraud theory.

1. *Standards Applicable to Federal Rule of Civil Procedure 12(b)(1) Motions.*

This motion to dismiss is made pursuant to Rule 12(b)(1), which applies in bankruptcy adversary proceedings.[7] The question is whether there is subject-matter jurisdiction over the third-party complaint.[8]

---

**5.** The Bricker defendants cross-claimed against the Eads, alleging counts sounding in indemnification and fraud. Those cross-claims are not in question here.

**6.** The pleadings containing the cross-claim and the third-party complaint are entitled "cross-complaint" and have been, sua sponte, redesignated to conform to the nomenclature of federal procedure so that the jurisdictional question may be addressed in its proper context.

The Bricker defendants did not comply with Federal Rules of Civil Procedure 13 and 14 (Federal Rules of Bankruptcy Procedure 7013 and 7014) in making their claims. Instead, they followed California civil procedure by filing a "cross-claim" against the Eads, Duffy, and GTY. California civil procedure *does not* apply in federal courts, including federal bankruptcy courts.

In federal civil practice, a defendant's claim against another defendant is a cross-claim. Fed.R.Civ.P. 13(g); Fed.R.Bankr.P. 7013. A defendant asserts a claim against a person who is not a party to the action by way of a third-party complaint. Fed.R.Civ.P. 14(a); Fed.R.Bankr.P. 7014.

The sua sponte redesignation to correct the errors is premised on the assumption that no party has been disadvantaged (the third-party defendants were served a summons and complaint) and on the need to construe the rules so as to achieve just, speedy, and inexpensive determination of the action. Fed.R.Civ.P. 1; Fed.R.Bankr.P. 1001. The redesignation is without prejudice to any defense, not waived by failure to raise it in this Rule 12 motion, that any party may assert.

**7.** Federal Rule of Bankruptcy Procedure 7012(b) provides in pertinent part:

Rule 12(b)-(h) F.R.Civ.P. applies in adversary proceedings.

Fed.R.Bankr.P. 7012(b).

**8.** GTY made the Rule 12(b) motion. Duffy, who had raised the same defense in his answer, participated in oral argument. As the issue is

In assessing a Rule 12(b)(1) motion, the complaint and the third-party complaint are to be construed broadly and liberally, but without drawing argumentative inferences. 5A C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1350 and 1363 (1990). The factual allegations are construed favorably to the pleader and are accepted as true, unless denied or controverted by the movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558–59 (9th Cir.1987); *Smith v. Gross*, 604 F.2d 639, 641 n. 1 (9th Cir.1979). The burden of proof is on the party asserting jurisdiction. *Trentacosta*, 813 F.2d at 1558; *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730 (9th Cir.1979).

### 2. *Jurisdiction Over the Primary Lawsuit.*

The primary lawsuit is plainly within the federal courts' jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The substantive claims are based on causes of action that are created by the Bankruptcy Code.

The cause of action created by section 363(n) provides remedies for collusion in bankruptcy sales, i.e. bid-rigging. These remedies include avoiding the sale, consequential damages, and punitive damages as well as attorneys' fees. There is no direct counterpart at state or common law.

The cause of action created by sections 549 and 550 provide remedies for unauthorized transfers of property from a bankruptcy estate that are made while the property is under the exclusive jurisdiction of the federal court. *See* 28 U.S.C. § 1334(d). The trustee may avoid the transfer and recover the property or its value from transferees of the avoided transfer. These causes of action are likewise purely statutory and have no direct analogue at state or common law.

the same and as both third-party defendants have argued the matter, this memorandum

Because proceedings based on causes of action created by sections 363(n), 549, and 550 "arise under" title 11, the plaintiff's claims in the primary lawsuit attacking the sale of Quail Meadows as collusive and unauthorized are firmly anchored on federal jurisdiction. Indeed, there are two anchors. In addition to federal bankruptcy jurisdiction, 28 U.S.C. § 1334, there is federal question jurisdiction, 28 U.S.C. § 1331, for causes of action such as these that arise under federal statute.

Thus, we reach the contested question of jurisdiction over the third-party complaint. Two theories of subject-matter jurisdiction are argued and will be considered in turn.

### 3. *Jurisdiction Over Third Parties Under Section 1334(b).*

Federal courts have "original but not exclusive jurisdiction of all civil proceedings ... related to cases under title 11." 28 U.S.C. § 1334(b). The test in the Ninth Circuit, borrowed from the Third Circuit, for so-called "related to" jurisdiction is:

> whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted.] Thus, the proceeding need not be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the bankrupt estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original).

*Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988).

While this definition of relatedness is quite broad, it has limits. Indeed, in *Fietz* itself the Ninth Circuit held that a particular cross-claim that the court perceived as having no chance of enhancing the property of the estate was insufficient-

treats them collectively.

ly related to support jurisdiction under section 1334(b). While the limits are as yet vague, the more one must stretch to find an "effect" on the estate, the greater the chance that a trial or appellate court will find subject-matter jurisdiction wanting. Moreover, the risk that an appellate court, after trial, may disagree with a trial court's finding of jurisdiction operates as a limiting factor on findings of relatedness by trial courts that can ill-afford wasting trial time on disputes they lack jurisdiction to entertain.

■ In the case at hand, the argument in support of relatedness under the prevailing test is that the possibility of recovery on the third-party complaint enhances the collectability of any judgment against the Bricker defendants. Ultimately, it adds to the potential sources of payment. Thus, it is argued, the trustee's options and freedom of action are enhanced. This is a good argument in the context of this case.

Although this court agrees that the relatedness test is satisfied with respect to the third-party claims against Duffy and GTY and that there is jurisdiction under section 1334(b), the proposition is not free from doubt.[9] As subject-matter jurisdiction can be reconsidered and second-guessed at any point in the litigation, including on appeal, consideration of the alternative theory of jurisdiction—supplemental jurisdiction—is warranted.

### 4. *Supplemental Jurisdiction and Its Components.*

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provides in pertinent part:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such origi-

nal jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Supplemental jurisdiction under section 1367(a) encompasses two related, but distinct, theories for extending federal jurisdiction beyond the confines of other jurisdiction statutes—ancillary and pendent jurisdiction. *See Scott v. Long Island Sav. Bank,* 937 F.2d 738, 742 n. 4 (2nd Cir.1991) (section 1367(a) is "codification of the principles of pendent and ancillary jurisdiction"); *Weinstead v. J.C. Penny Ins. Co.,* 933 F.2d 576, 580 (7th Cir.1991) (same). Both theories are implicated in this instance.

The distinction between ancillary and pendent jurisdiction is still important. Section 1367 purports to incorporate the constitutional tests that were invoked in the context of those theories. It is difficult to apply section 1367 to specific situations without an understanding of the doctrines that underlie the statute.

### a. Ancillary Jurisdiction.

■ Ancillary jurisdiction implements the doctrine that a court with jurisdiction over a case may entertain subject matter over which it would otherwise lack jurisdiction whenever the matter must be considered to do full justice in the case. 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 1414 and 1444. The progenitor of ancillary jurisdiction is *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1860). The foundational principle is that when a federal court "effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction." [10] *Aldinger v. Howard,* 427 U.S. 1,

---

**9.** Indemnity claims between nondebtors, one of whom is indebted to the estate, have been found to be not related to the administration of a bankruptcy estate within the meaning of 28 U.S.C. § 1334(b) by some courts applying the *Pacor* [i.e. *Fietz*] test. *See Scott v. Equitable Federal Savings & Loan Assoc. (In re German),* 97 B.R. 373, 375 (S.D.Ohio 1989), and cases cited therein.

**10.** This is pertinent in bankruptcy because the federal court has exclusive jurisdiction over all property of the debtor and of the estate:

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

11, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976).

■ Compulsory counterclaims, impleaders, cross-claims, and interventions as of right all qualify for ancillary jurisdiction. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 375 n. 18, 98 S.Ct. 2396, 2403 n. 18, 57 L.Ed.2d 274 (1978); 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 1414, 1433, 1444. The doctrine is primarily of use to defendants and to parties who will be so affected as to warrant participation; claims by plaintiffs do not qualify. *Owen Equip. & Erection Co.,* 437 U.S. at 376, 98 S.Ct. at 2403.

■ Ancillary jurisdiction, however, does not sweep broad. The nonfederal claim must be logically related to the primary lawsuit. Thus, for example, where a defendant impleads a third-party defendant, the outcome of the third-party action must depend at least in part on the outcome of the primary lawsuit. *Id.*

### b. Pendent Jurisdiction.

■ Pendent jurisdiction, in contrast, sweeps in claims that do not qualify for ancillary jurisdiction. Typically it is asserted by a plaintiff who, suing on a federal claim, includes a state claim as "pendent" to a federal claim and sometimes, in so-called pendent party jurisdiction, names an additional defendant. Pendent jurisdiction is premised on the existence of a relationship between the federal claim and the state claim that, under the facts of the case, "permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The basic inquiries are whether there is a common nucleus of operative fact and whether the parties ordinarily would be expected to resolve the matter in one judicial proceeding. There is much commentary on the subject. *See, e.g.,* 1 J. Moore, *Moore's Federal Practice* ¶ 0.67 (1991); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* §§ 3567–3567.2 (1991).

One facet of pendent jurisdiction—inclusion of pendent parties who, if made ordinary parties, would destroy diversity jurisdiction—has provoked the most controversy. In seeking dismissal, Duffy and GTY are relying on cases addressing pendent party jurisdiction.[11]

■ A pendent claim can also be made in a third-party complaint. Once the federal court properly exercises ancillary jurisdiction over an impleader, it may also exercise pendent jurisdiction over claims that are added pursuant to Federal Rule of Civil Procedure 18 subject to the *Gibbs* test. *City of Twin Falls,* 806 F.2d at 867–68. In other words, ancillary jurisdiction can be the hook from which a pendent claim hangs.

### c. Discretionary Nature of Ancillary and Pendent Jurisdiction.

■ The federal court has the discretion to decline to exercise ancillary and

28 U.S.C. § 1334(d). "Property of the estate" includes, inter alia, "all legal and equitable interests of the debtor ... wherever located and by whomever held." 11 U.S.C. § 541(a).

11. As there are no pendent parties in this proceeding, the third-party defendants miss the point when they argue that the third-party complaint should be dismissed because the Ninth Circuit does not recognize pendent party jurisdiction. They correctly point out that this circuit has expressed the view that adding pendent parties in connection with pendent claims exceeds the bounds of Article III. *Ayala v. United States,* 550 F.2d 1196 (9th Cir.1977), *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). Recently, the Supreme Court held that pendent party jurisdiction could not be exercised without statutory authorization. *Fin-*

*ley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The Congress enacted the supplemental jurisdiction statute as a legislative response to *Finley*. D. Siegel, *Changes in Federal Jurisdiction and Practice Under the New (Dec. 1, 1990) Judicial Improvements Act,* 133 F.R.D. 61, 65 (1991).

There are in this instance only impleader claims with a pendent claim, but no pendent party, attached thereto. Since the Ninth Circuit recognizes both ancillary jurisdiction over impleaders and pendent claim jurisdiction in connection with impleaders, the pendent party cases are inapposite. *United States v. City of Twin Falls,* 806 F.2d 862, 866–68 (9th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987).

pendent jurisdiction. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *City of Twin Falls,* 806 F.2d at 868; *Blake v. Pallan,* 554 F.2d 947, 958 (9th Cir.1977). If the court elects to exercise jurisdiction, such exercise "remains open throughout the litigation" and is subject to change that may include dismissal of the state claim during pretrial procedures or during trial. *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139; *see City of Twin Falls,* 806 F.2d at 868.

The supplemental jurisdiction statute now specifies the factors relevant to the exercise of that discretion. 28 U.S.C. § 1367(c).

With this background, the threshold question is whether Duffy and GTY each faced at least one impleader claim based on ancillary jurisdiction. If such ancillary jurisdiction is established, then claims pendent to the impleader may also be considered. Thus, the conclusion that there is a proper impleader shifts the focus to whether any pendent claim satisfies the *Gibbs* test, as restated at section 1367, and whether the court should exercise its discretion to hear the ancillary and pendent claims.

### 5. *Requirements for Impleader.*

An impleader under ancillary jurisdiction requires that each third-party defendant must be a person "who is or may be *liable to the third-party plaintiff* for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a), *incorporated by* Fed.R.Bankr.P. 7014 (emphasis supplied).

■■■ This requirement has three facets. First, the liability must be derivative and must flow to the third-party plaintiff; mere liability by the third-party defendant to the plaintiff (as opposed to the third-party plaintiff) will not suffice. 3 J. Moore

& R. Freer, *Moore's Federal Practice* ¶ 14.04 at 14–32 (2d ed. 1991). Second, the third-party defendant's liability must be for losses that the third-party plaintiff suffers in the capacity of defendant on the plaintiff's claim. *Id.*

■■■ Finally, because impleader claims must be derivative of the third-party plaintiff's liability to the plaintiff, any claims by the third-party plaintiff that are not derivative, even though they arise out of the same "transaction or occurrence," cannot properly be advanced by way of impleader. *Id.; Stewart v. American Int'l Oil & Gas Co.,* 845 F.2d 196 (9th Cir.1988); *United States v. One 1977 Mercedes Benz,* 708 F.2d 444 (9th Cir.), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1983). In other words, the transaction-based analysis that emphasizes the existence of a common nucleus of operative facts is central to pendent jurisdiction and to compulsory counterclaims and cross-claims but takes a back seat to derivative liability when it comes to impleader and ancillary jurisdiction.

So long as the requirement of derivative liability is satisfied, it matters not that the impleader's theory for recovery is negligence rather than indemnity or contribution. 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1446 (2d ed. 1991).

■■■ Independent claims may be asserted in a third-party complaint by way of joinder of claims and, if necessary, of parties, pursuant to Federal Rules of Civil Procedure 18 and 19, which apply (with exceptions) in bankruptcy adversary proceedings.[12] The rub is that there must be an independent basis for federal jurisdiction over each such claim. That basis may be provided by the supplemental jurisdiction statute.

---

**12.** Federal Rule of Bankruptcy Procedure 7018 provides:

Rule 18 F.R.Civ.P. applies in adversary proceedings.

Fed.R.Bankr.P. 7018.

Federal Rule of Bankruptcy Procedure 7019 provides:

Rule 19 F.R.Civ.P. applies in adversary proceedings, except that (1) if an entity joined as a party raises the defense that the court lacks jurisdiction over the subject matter and the

defense is sustained, the court shall dismiss such entity from the adversary proceeding and (2) if an entity joined as a party properly and timely raises the defense of improper venue, the court shall determine, as provided in 28 U.S.C. § 1412, whether that part of the proceeding involving the joined party shall be transferred to another district, or whether the entire adversary proceeding shall be transferred to another district.

Fed.R.Bankr.P. 7019.

Through this prism, we view each claim against the third-party defendants looking for a theory of derivative liability in order to determine whether jurisdiction is ancillary or pendent.

### 6. The Impleader in this Case.

 The count that seeks indemnification for any sums the Bricker defendants are compelled to pay is unambiguously derivative and is a paradigm impleader. The Bricker defendants want Duffy and GTY to reimburse any sums they must pay the plaintiff. There is no need for an independent basis for jurisdiction in order to maintain a third-party action pursuant to Federal Rule of Civil Procedure 14 and Federal Rule of Bankruptcy Procedure 7014. As discussed above, it is settled that there is ancillary jurisdiction over such an impleader.

Several of the other counts also qualify as impleaders for jurisdictional purposes. The legal malpractice count against Duffy is fundamentally derivative as the measure of damages turns on the plaintiff's recovery.[13] Likewise, the breach of contract count against Duffy and GTY is derivative, since the breach and the damages both depend upon the rights of the plaintiff against the third-party plaintiffs.

These counts may properly be maintained as impleaders without an independent basis for federal jurisdiction because they are derivative (i.e. any liability is owed directly to the third-party plaintiff), arise out of the very transaction that is being contested in the primary lawsuit, and bear a close factual and logical nexus with the primary claim. *City of Twin Falls*, 806 F.2d at 866–68; *United States ex rel. Payne v. United Pac. Ins. Co.*, 472 F.2d 792, 795 (9th Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973). Indeed, particularly with respect to legal

malpractice claims that turn on the interpretation of a federal statute, the federal forum is better situated to hear the matter.

The count based on fraud, however, seeks punitive damages in addition to any losses resulting from the plaintiff's claim. It is a claim that is potentially materially in excess of the plaintiff's claims against the Bricker defendants. In view of the limited scope of the ancillary jurisdiction doctrine, it is prudent, and the better view, to treat the claim as not derivative for purposes of impleader and, thus, not within ancillary jurisdiction.

### 7. The Pendent Claim.

 In assessing the fraud count under pendent jurisdiction analysis, the central question is whether there is a common nucleus of operative fact.

The procedural basis for joining the fraud count to the impleader is Federal Rule of Civil Procedure 18(a). A party asserting a claim to relief as a third-party claim may join as many claims as the party has against an opposing party—so long as there is federal subject-matter jurisdiction. As between the third-party plaintiff and the third-party defendant, the fraud count is a pendent claim that needs a basis for jurisdiction.

The supplemental jurisdiction statute, section 1367, affords a basis for jurisdiction over the pendent fraud count. The statutory test that asks whether the claim is so related to the other claims over which there is jurisdiction that it forms "part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), incorporates the constitutional test for the existence of a "case." The focus is the transactional concept of whether the nonfederal claims arise from a "common nucleus of operative fact" with at least one substantial claim that is within federal jurisdiction and whether the claims

---

**13.** The Bricker defendants allege that Duffy advised them that, "even though Eads was in said bankruptcy proceeding, Eads could nevertheless sell the Property to [Bricker defendants] on the terms proposed by Eads without the approval of the Bankruptcy Court or anyone else." Third-Party Complaint, ¶ 34. The specific relief sought turns on the outcome of the main lawsuit: "As a proximate result of such negligence and advice, [Bricker defendants] have been named in the principal adversary proceeding which is before this court and have been damaged in an amount which is presently unknown, but which will be the subject of proof at trial." *Id.* at ¶ 36.

ordinarily would be expected to be tried in one judicial proceeding. *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138; 3 J. Moore & R. Freer, *Moore's Federal Practice* ¶ 14.26, at 14–118 (1991).

Applying that test to the fraud count leads to the conclusion that it is part of the same "case" for purposes of constitutional analysis. In the count, it is alleged that Duffy and GTY knew and concealed the doubtful validity of paying part of the purchase price "outside of bankruptcy." The operative facts relating to fraud are essentially identical to those that support the indemnification and malpractice counts, and if it were in the posture of a counterclaim, it would be compulsory. Ordinarily, such a claim would be expected to be tried in one judicial proceeding.

In short, there is a close logical and factual nexus between the pendent claim and the impleader claims. Therefore, there is pendent jurisdiction over the state law fraud claim. *City of Twin Falls*, 806 F.2d at 867–68. Perforce, there is supplemental jurisdiction under section 1367.

### 8. *Exercise of Discretion.*

Having concluded that there is supplemental jurisdiction over each count of the third-party complaint, there remains the matter of whether to exercise the court's discretion to entertain the various claims.

The supplemental jurisdiction statute specifies bases for the exercise of such discretion at section 1367(c):

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The first and third statutory factors are inapplicable. These are garden-variety claims. The plaintiff's claims have not been dismissed.

The second factor is likewise inapplicable. The third-party claims do not substantially predominate over the plaintiff's claims in the primary lawsuit. The central facts are those that the plaintiff will be trying to prove on his case in chief. If those facts are proved, the additional facts that may pertain to indemnification, breach of contract, legal malpractice, and fraud will be comparatively straightforward and will not be disproportionate to the central facts. Moreover, the cross-claim by the Bricker defendants against their codefendants, Bill and Patsy Eads (the debtors), which alleges the same fraud that is alleged against Duffy and GTY, will necessarily be heard. In short, the state claims do not substantially predominate.

As to the fourth statutory factor, exceptional circumstances that entail compelling reasons for declining jurisdiction, none are suggested or suggest themselves at this stage of the proceedings.

In *Gibbs* the Supreme Court observed that judicial economy, convenience, and fairness to litigants, as well as a preference for avoiding needless decisions of state law, are factors that bear upon the exercise of discretion. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

Exercising jurisdiction will plainly serve the interests of judicial economy during the pretrial stage and will serve the convenience of the parties, who will be entitled to engage in comprehensive discovery in a single forum regarding a common nucleus of operative fact. Federal Rules of Civil Procedure 26–37 apply in bankruptcy adversary proceedings. Fed.R.Bankr.P. 7026–7037. It is evident that a unified proceeding is fair to the litigants.

To be sure, there is a possibility that the calculus of judicial economy and convenience could change as trial nears if the third-party claims become cumbersome to try in view of the circumscribed power of bankruptcy judges. At least some of the third-party claims are not within the cate-

**398**

gories of "core" proceedings that a bankruptcy judge is authorized to "hear and determine"—i.e. try to final judgment. 28 U.S.C. § 157(b). In a noncore proceeding, in the absence of unanimous consent to the bankruptcy judge entering final judgment, a report and recommendation would have to be prepared and reviewed by the district court de novo. 28 U.S.C. § 157(c). If the third-party defendants who have demanded trial by jury are entitled to a jury and do not consent to such trial before a bankruptcy judge, there may be further administrative difficulties for the court at the time for trial. At this stage of the litigation, however, those are problems that may or may not arise and do not affect the analysis of subject-matter jurisdiction.

The answer to any inconvenience or diseconomies that may later arise is that the exercise of the discretion to assume jurisdiction remains open throughout the litigation. If developments in the litigation later warrant a modification of this exercise of discretion on the basis that it is impracticable to resolve the litigation in a single forum, the question will be considered anew.

The motion to dismiss for lack of subject-matter jurisdiction is DENIED.