In re Irma J. WALKER.

Irma J. WALKER, Appellant,

v.

CADLE COMPANY INC., Appellee.

Stan SVARA, dba SKS Enterprises,
Third–Party Defendant,

Denise D. LINDSEY, Third–
Party Defendant.

Civ. A. No. 93–3425.

United States District Court,
E.D. Louisiana.

April 15, 1994.

Phillip Krch Wallace, Phillip K. Wallace, PLC, New Orleans, LA, for Irma J. Walker.

Mark Christopher Landry, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, LA, for Cadle Co., Inc.

Lawrence Robert Anderson, Jr., Seale, Smith, Zuber & Barnette, Baton Rouge, LA, for Stan Svara.

Denise D Lindsey, pro se.

### ORDER AND REASONS

FELDMAN, District Judge.

This appeal of the bankruptcy court's decision is brought by The Cadle Company, Inc. and Stan Svara. For the following reasons, the decision is AFFIRMED in part and REVERSED in part.

### I. *Background*

Irma J. Walker, the appellee, bought a 1980 Buccaneer Mobile Home in December 1979 from Carter Mobile Homes in Covington, Louisiana. Walker financed the purchase with a chattel mortgage in favor of Capital Bank & Trust Company. In May 1990 The Cadle Company, Inc. purchased the mortgage from the Federal Deposit Insurance Corporation after Capital was declared insolvent.

During 1991 Walker became delinquent in her monthly payments on the loan. Cadle, through its attorney Denise D. Lindsey, a third-party defendant, sued Ms. Walker and later took a default judgment against her for $11,810.74, plus interest, costs and attorney's fees.

On July 26, 1991 Walker filed for relief under Chapter 7 of the Bankruptcy Code. She filed the usual schedule B–2, itemizing her personal property and listing its aggregate value at $1,093. Walker also submitted a statement of intent that she would voluntarily surrender the trailer within forty-five days, as required by 11 U.S.C. § 521(2)(B).

Ms. Lindsey received notification of Walker's bankruptcy filing and notified Jeff Joseph on August 5, 1991; Joseph was the Cadle account officer with responsibility for the Walker file. Cadle filed its $14,521.88 proof of claim in the bankruptcy proceeding on August 12, 1991.

In early August, Mr. Joseph spoke to Stan Svara, another third-party defendant with whom he had had prior business dealings. Mr. Joseph indicated he might have a trailer available in about a month and gave Ms. Walker's telephone number to him. Walker told Svara, when he called, that she had filed for bankruptcy and that he should speak with her lawyer.

Around August 23, 1991 Ms. Lindsey sent to Walker's attorney, Jonathan May, a voluntary surrender and release form which Lindsey understood would be executed at the § 341 meeting. At the § 341 meeting on September 3, 1991, Lindsey gave an additional copy to Walker's new attorney, James Moorman, who replaced Mr. May after his unexpected death. Walker told Lindsey that she needed until September 7, 1991 to remove her things from the trailer. Neither of the voluntary surrender and release forms was executed.

On September 4, 1991 Lindsey sent Joseph a letter stating that Walker would be out by September 7th and would surrender the trailer at any time thereafter. Lindsey cautioned, however, that the surrender had to be confirmed with Walker's attorney first.

On September 9, 1991 the bankruptcy court granted the trustee's petition of disclaimer and abandonment of the trailer.

After the creditor's meeting, Cadle began negotiating with Svara for the purchase of the mortgaged trailer. On or about September 6, 1991 Joseph told Svara that Walker would be out of the trailer over the weekend and asked Svara to look at the trailer to determine if he was interested in buying it.

A few days later Svara went out to see the trailer and found it with the door open and dogs and cats roaming around. On September 10, 1991 Svara told Joseph about the bad condition of the trailer and they agreed that Svara would buy it from Cadle for $1,750. Shortly after speaking with Svara, Joseph spoke with Lindsey and told her also about the trailer's condition.[1]

A few days later Joseph called Lindsey and told her that he had sold the trailer and that he needed the Voluntary Surrender Form. Lindsey then wrote Walker's lawyer and sent still another surrender form. The next day, Cadle sold the trailer to Joni Davis, Svara's fiancé, for $1,700. Shortly thereafter Svara and his people removed the trailer from the lot where it was located. Again, Svara found the trailer open and infested with roaches and fleas. During the removal process, Walker's personal property was strewn about the trailer lot.

A week later, Walker discovered that her trailer was gone and that her personal property had been scattered about the area. None of her belongings were worth salvaging because of exposure to the elements.

Walker was discharged in bankruptcy on March 18, 1992.

Walker filed an adversary proceeding against Cadle for violating the automatic stay imposed by 11 U.S.C. § 362. She asked for damages and attorney's fees for Cadle's willful violation of the automatic stay.

Cadle counterclaimed to have Walker's discharge revoked and also filed a third-party complaint against both Lindsey and Svara for contribution or indemnity.

The bankruptcy court conducted a trial on the merits, and on December 10, 1992 the court issued preliminary findings of fact and conclusions of law dismissing the third-party complaint against Lindsey. The court requested additional information and briefs on the amount of attorney's fees. The court did not rule on the third-party complaint against Svara. After the parties responded with further post-trial memoranda, the bankruptcy court issued its Reasons for Decision and Second Supplemental Findings of Fact and Conclusions of Law.

## II. The Ruling Below

The bankruptcy court held that both Cadle and Svara willfully violated the automatic stay regarding Walker's property and found that Walker suffered damages in the amount of $2,000. The court further ordered plaintiff to file an itemized statement of attorney's fees.

Thereafter, the bankruptcy court entered supplemental findings of fact and conclusions of law and ruled that Walker's attorneys' fees were $4,800 and that court costs were $361.76. The court dismissed Cadle's third-party demand against Lindsey but withheld judgment on Cadle's third-party demand against Svara pending a hearing on Svara's objections. On August 2, 1993, the court entered its Reasons for Decision and Second Supplemental Findings of Fact and Conclusions of Law. The court held that Svara and Cadle were each fifty percent responsible for the stay violation. The court rejected Svara's objections to Cadle's third-party complaint on the ground of lack of jurisdiction and no cause of action. The court also denied Cadle's motion for a new trial.

On appeal, Svara asks this Court to reverse the bankruptcy court decision that (1) the Cadle Company has a cause of action against him under the Bankruptcy Code for contribution or indemnity as a party who allegedly violated the automatic stay as a co-participant; (2) the bankruptcy court had subject matter jurisdiction over the third-party complaint of Cadle against Svara; (3) Svara willfully violated the automatic stay, and (4) Svara was equally at fault with Cadle for the violation of the automatic stay. Cadle appeals to this Court to reverse the judgment of the bankruptcy court finding that (1) it violated the automatic stay; (2) Walker was damaged; (3) Walker was entitled to $2000 in damages and $4800 in attorney's fees; (4) the damage award should be apportioned one-half each between Cadle and

---

1. The bankruptcy court found that Lindsey did not authorize the recovery of the trailer. Lindsey testified that she did not tell Joseph that Cadle could pick up the mobile home; rather, she testified that she told Joseph that she still needed authorization from Walker's attorney.

Svara; and (5) the third-party demand against Lindsey should be dismissed.

### III. Standard of Review

The Court will only set aside the findings of fact of the bankruptcy court for clear error. Rules Bankr.Proc.Rule 8013; *Matter of Missionary Baptist Foundation of America,* 818 F.2d 1135, 1142 (5th Cir.1987). A finding of fact is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). Additionally, when reviewing matters that are within the discretion of the bankruptcy court, a district court applies an abuse of discretion standard of review. *Matter of Texas Extrusion Corp.,* 844 F.2d 1142, 1158 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988). The factual determination with respect to a fee award is within the discretion of the bankruptcy court and, therefore, should also be reviewed deferentially under an abuse of discretion standard. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Heasley v. CIR,* 967 F.2d 116 (5th Cir.1992). The bankruptcy court's conclusions of law are, in contrast, subject to *de novo* review. *Matter of Perez,* 954 F.2d 1026, 1027 (5th Cir.1992).

### IV. Cadle's Third–Party Complaint

Cadle's third-party complaint against Svara seeks contribution or indemnity for any amounts found to be owing to Walker.

### A. No Cause of Action Under Bankruptcy Code

The Court must first ask whether a cause of action for contribution in bankruptcy exists. The bankruptcy court held that Rule 14 of the Federal Rules of Civil Procedure, which applies to bankruptcy proceedings through Rule 7014 of the Federal Rules of Bankruptcy Procedure, allows the third-party claim for contribution Cadle asserted against Svara. Rule 14 states that, "at any time after commencement of the action, a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R.Civ.P. 14(a). Rule 14, however, does not create a substantive cause of action; it merely sets up a procedural method for asserting an otherwise cognizable substantive right. 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1448 (1990).

The standards for establishing a right to contribution or indemnity under a federal statute have been elaborated upon by the Supreme Court in three cases. *Musick, Peeler & Garrett v. Employers Insurance of Wausau,* —— U.S. ——, 113 S.Ct. 2085, 124 L.Ed.2d 194 (establishing a right to contribution under Rule 10b–5 of the Securities and Exchange Commission); *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (no right to contribution for recovery based on a violation of the Sherman Act); and *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (no right to contribution for violations of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964).

*Texas Industries* provides special doctrinal guidance. The Supreme Court in *Texas Industries* held that a right to contribution may be created in one of two ways: first, it may be created by statute (expressly or by clear implication); second, it may be implicated through the power of the federal courts to fashion a federal common law remedy for unlawful conduct. 451 U.S. at 639, 101 S.Ct. at 2066. The Supreme Court noted that instances where a federal court has authority to fashion federal common law "are few and restricted ... and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests' ... and those in which Congress has given the courts the power to develop substantive law ..." *Id.* at 641, 101 S.Ct. at 2067. (citations omitted).[2] *See also*

---

2. A "uniquely federal interest" was said to involve "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* at 641, 101 S.Ct. at 2067.

*Northwest Airlines, Inc.,* 451 U.S. at 91, 101 S.Ct. at 1580.

The Supreme Court used the traditional cause of action analysis drawn from *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) to determine whether a private right of action should be implied from a federal statute. *Cort v. Ash* asks four questions: 1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; 2) whether there is any indication of a legislative intent to create such a cause of action; 3) whether the cause of action is consistent with the underlying principles of the field of law; and 4) whether the cause of action has been traditionally relegated to state law. *Northwest Airlines, id.* at 91–92, 101 S.Ct. at 1580–81.

■ When one applies the doctrine to this analysis of § 362(h) of the Bankruptcy Code, one must conclude that a right to contribution cannot be found. Neither § 362(h) or any other provision of the Bankruptcy Code expressly mentions a right of contribution. *See Wieboldt Stores, Inc. v. Schottenstein,* 111 B.R. 162 (N.D.Ill.1990) (no right to contribution under a § 548 fraudulent conveyance action); *In re John Peterson Motors, Inc.,* 56 B.R. 588, 591 (Bankr.D.Minn.1986) (no right to contribution under a § 547 preference action). At least one court has stated "there is certainly nothing in Title 11 [of the Bankruptcy Code] to suggest that Congress expressly or implicitly intended to create a right to contribution or indemnity." *John Peterson Motors,* 56 B.R. at 591, n. 5. Moreover, the statutory text itself does not indicate any intention or goal of Congress to vest the courts with the power to fashion additional remedies.

The Supreme Court's thinking in *Musick,* while recognizing a right to contribution in the field of securities regulation, equally supports the conclusion that no right to contribution exists under § 362 of the Bankruptcy Code. The Court distinguished both *Texas Industries* and *Northwest Airlines* because in those cases the federal interests were defined by statutory provisions that had ex-pressly created and inferentially restricted the substantive damages for which contribution was sought. *Musick,* —— U.S. at ——, 113 S.Ct. at 2088. The Court reasoned that in *Texas Industries* and *Northwest Airlines* (1) the applicable statutes did not implicate uniquely federal interests of the kind that oblige courts to formulate federal common law, (2) Congress had neither expressly nor by clear implication envisioned a right to contribution to accompany the substantive damages rights created in the statutes, and (3) that Congress did not intend for courts to have the power to supplement the remedies enacted. *Id.* The Court, however, recognized the right to contribution in the field of securities regulation because such a right had been implied by the judiciary long before any congressional direction existed. *Id.* The important distinction in these three cases is that in the development of 10b–5 doctrinal rights Congress did not later enact specific legislation codifying the right of action that had been created and developed jurisprudentially. The judicially created private right of action for a violation of a bankruptcy stay, was, on the other hand, enacted by specific Congressional pronouncement. 2 *Collier on Bankruptcy* § 362.11–2 (15th Ed. 1993). It follows that because the enactment of subsection (h) of Section 362 does not specifically provide for a right of action for contribution, Congress has functionally indicated a contrary intent.

## B. Subject Matter Jurisdiction

The Fifth Circuit suggests the proper approach to be taken to determine whether bankruptcy jurisdiction exists over a state law claim for contribution. *In re Wood,* 825 F.2d 90 (5th Cir.1987). *Wood* and its companion cases compel the conclusion that the bankruptcy court did not apply the law correctly. Judge Wisdom in *Wood* explicitly states that two questions must be asked: "first, whether bankruptcy jurisdiction exists; [and] second, if jurisdiction does exist, whether the bankruptcy court may proceed over this matter as a 'core' or a 'non-core' proceeding." [3] *Id.* at 91. Judge Wisdom's

---

3. Core proceedings are those over which the bankruptcy court may exercise full judicial pow-

er and non-core proceedings are those over

words echo the difference between the bankruptcy jurisdiction of a district court and the judicial power of a bankruptcy court. *Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 461 (E.D.La.1993).

The statutory grant to district courts is found in 28 U.S.C. § 1334, which provides that district courts shall have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (1993). Consequently, a bankruptcy court may exercise jurisdiction over a matter if it (1) arises under title 11; (2) arises in cases brought under title 11; or (3) is related to a title 11 matter.

*Wood* explains that it is not necessary to distinguish between proceedings arising under, arising in a case under, or related to a case under title 11 because these references operate conjunctively to define the scope of the federal bankruptcy jurisdiction. *Id.* at 93. It is necessary only to determine whether a matter is related to the bankruptcy proceeding. *Id.* *Wood* makes important sense of an otherwise badly crafted text.

The Fifth Circuit in *Wood* then adopted the Third Circuit's methodology for determining whether a proceeding is related to the bankruptcy case: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* *(quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). An admirable statement because of its elegant simplicity. The *Pacor* court elaborated on this inquiry by stating: an "action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994. The Fifth Circuit, more recently endorsed this gloss in *Matter of Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir.1988).

The vast majority of cases that have worked with the conceivable effects test regarding third-party complaints like the one here have found jurisdiction to be lacking.

*In re Alpha Steel Co., Inc.*, 142 B.R. 465, 470–72 (M.D.Ala.1992); *In re Spaulding & Co.*, 131 B.R. 84, 88–90 (N.D.Ill.1990); *In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 984–87 (D.Minn.1989). Non-related claims arising in core proceedings are not thereby transformed into core claims and the fact that non-debtors have a dispute about their rights in the property of the debtor's estate does not of itself create jurisdiction unless that dispute will, in *Wood*'s terms, affect the debtor's rights in that property. *In re Selig*, 135 B.R. 241, 245 (Bankr.E.D.Pa. 1992). That is the inquiry that drives this analysis.

■ The question here, therefore, is whether Cadle's claim for contribution and indemnity against Svara could have some conceivable effect on the bankruptcy case. More specifically, the inquiry transforms to whether the outcome of the contribution claim could alter the debtor's rights, liabilities, options or freedom of action. It seems rather clear that the answer must be that a claim for contribution will not affect the debtor because Walker will be awarded the same damages for the violation of the automatic stay without regard to the outcome of the third-party complaint. A claim for indemnity or contribution between two co-actors, if successful, will merely define and adjust the rights between the defendant and the third-party disputant as to who should ultimately be responsible for what is owed to the debtor in the main action and for what allocable share. *See In re John Peterson Motors, Inc.*, 56 B.R. 588, 591 (Bankr.D.Minn.1986) (third-party claim for contribution for alleged preferential transfer has no conceivable effect on estate's ultimate recovery). Cadle's claim for contribution and indemnity will have no bearing on whether or to what extent Walker recovers damages for the alleged violation of the automatic stay.

This Court, then, has no subject matter jurisdiction over the matter under § 1334 because the third-party complaint starkly fails the conceivable effects test. Thus the question of whether the proceeding is core or

which the bankruptcy court exercises only limit-    ed authority. *Wood*, 825 F.2d at 91.

non-core loses its importance and does not need to be addressed.[4]

■ Cadle's assertion that the bankruptcy court could have jurisdiction over its third-party complaint against Svara under 28 U.S.C. § 1367 is also without merit. Cadle contends that the Court could exercise supplemental jurisdiction under § 1367 because it constituted part of the same case or controversy as the main action.[5] Cadle reads *In re Eads*, 135 B.R. 387 (Bankr.E.D.Cal.1991) as support for its argument that the supplemental jurisdiction statute applies in this bankruptcy context. However, the holding in *Eads* is, in the court's own words, "limited to a statement of the subject matter jurisdiction of the district court ... [and] .. does not address whether a bankruptcy judge may preside over the trial." *Id.* at 390. The district court in *Eads* also recognized that its power to exercise supplemental jurisdiction should only be exercised where it is clearly appropriate to do so under the considerations set forth in § 1367. *Id.* at 396–7. Some courts have even questioned the applicability of the supplemental jurisdiction statute to bankruptcy courts. *In re Alpha Steel Co.*, 142 B.R. 465, 470–2 (M.D.Ala.1992); *In re Pettibone Corp.*, 135 B.R. 847, 852 (Bankr. N.D.Ill.1992).

It is instructive at this point to recall the history of the Congressional grant of bankruptcy jurisdiction to determine whether § 1367 ought to be applied by the bankruptcy court. The Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) held that subsection (c) of section 1471 of title 28 unconstitutionally violated the separation of powers.[6] The Court declared that the jurisdictional grant to the bankruptcy court encompassed proceedings too far removed from the core of traditional bankruptcy powers to allow non-Article III judges to adjudicate them.[7] "Related to" jurisdiction already allows the bankruptcy court to hear, to the extent Congress intended, all supplemental claims that have a conceivable effect on the bankruptcy. It seems counterintuitive, then, that Congress, having given bankruptcy courts only limited judicial power over "non-core" or "related to" proceedings, would have intended for bankruptcy courts to nevertheless look to 28 U.S.C. § 1367 as an additional or expanded basis of jurisdiction. This Court holds that it should not be so used.

The Court recognizes that this decision leaves Cadle in the uncomfortable position of being subject to liability in this proceeding, while being compelled to pursue the party which it believes was primarily responsible for the violation of the automatic stay at issue, Svara, in another forum. However, that result seems not only legally inescapable under current statutory mandates, it furthers the public policy of making the party with the closest relationship to the wrongdoer responsible for violating the automatic stay. A contrary result is for Congress to consider, not this Court.

Because this Court finds that the bankruptcy court did not have subject matter

---

4. The bankruptcy court's determination that Cadle's contribution claim was a core proceeding was also erroneous. The bankruptcy court reasoned that because the main demand (violation of the automatic stay) was a core proceeding and because the plaintiff could have sued Svara for the stay violation and that demand would have been a core proceeding, it did not matter that this was a third-party complaint. This reasoning is rather circular, and seems unsupported by authority. In *In re Summit Airlines, Inc.*, 160 B.R. 911 (Bankr.E.D.Pa.1993), the bankruptcy court stated that the fact that the main claim was indisputably core did not make a third-party complaint by the defendant "core." The Court is similarly persuaded.

5. 28 U.S.C. § 1367(a) provides that the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the main action that they form part of the same case or controversy.

6. The Court stated that "such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts." *Marathon*, 458 U.S. at 87, 102 S.Ct. at 2880.

7. "The constitutional problem which arose concerned the grant of jurisdiction ... to determine controversies involving adverse parties and property not within the custody of the bankruptcy court." 3 *Collier on Bankruptcy* § 3.01–9 (15th Ed.1993).

jurisdiction, the Court does not address Svara's remaining arguments.

## C. Violation of the Automatic Stay

█ The record unquestionably supports the bankruptcy court's finding that Cadle violated § 362(a)(1) and (5). Section 362(a)(1) operates as a stay for "the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under the title." The bankruptcy court correctly observed that Congress has described the purpose of § 362(c) and the interrelationship of paragraphs (1) and (2) as follows: "Subsection (c) of Section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate ... It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor. Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied." S.Rep. No. 989, 95th Cong., 2d Sess. 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838. When the bankruptcy trustee abandoned the trailer, the trailer ceased to be property of the estate, but it then became the property of the debtor which was also protected by the automatic stay until dismissal or discharge.

█ Cadle seeks mitigation because it only sold the trailer under the impression that it owned the trailer and, therefore, it did not employ any process or institute any proceeding which resulted in the seizure or sale of the trailer. However, the bankruptcy court correctly held that § 362(a)(1) mandates that a continuation of a judicial or other action or proceeding against the debtor is a violation of the automatic stay.

The bankruptcy court also found that Cadle violated § 362(a)(5), which operates as a stay for "any act to create, perfect, or enforce against the property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 28 U.S.C. § 362(a)(5) (1993). Cadle somewhat narrowly argues that the sale was not one pursuant to a lien right but, rather, it was a sale pursuant to a belief, perhaps mistaken, that it actually owned the trailer. This argument also seems without merit because the belief that Cadle owned the trailer is anchored to the chattel mortgage or lien that it enjoyed and, therefore, the bankruptcy court's ruling on this issue was correct.

## D. Fees and Costs

█ If the violation of the automatic stay was willful, then Walker is entitled to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (1993). Willfulness is not measured by specific intent to violate a court order; it merely speaks to the deliberateness of the violator's conduct and knowledge of the bankruptcy filing. *In re Kilby*, 100 B.R. 579 (Bankr.M.D.Fla.1989); *In re Aponte*, 82 B.R. 738 (Bankr.E.D.Pa.1988). The record supports the bankruptcy court's decision that the defendant's actions were deliberate under the circumstances and with the knowledge of the bankruptcy.

Cadle's assertion that Walker was not damaged by its actions and that any violation it committed was merely technical is also without merit. A technical violation is one which is done without knowledge of the bankruptcy filing and results in no harm to the debtor. *In re Kroh Bros. Development Co.*, 101 B.R. 114 (Bankr.W.D.Mo.1989). Cadle's actions were done with the knowledge of the bankruptcy and the debtor was damaged.

Cadle also argues that Walker was not damaged in the amount of $2,000. But the bankruptcy court's finding that Walker was damaged in the amount of $2,000 is not clearly erroneous.

█ Finally, Cadle argues that Walker was not entitled to $4,800 in attorney's fees because Walker failed to present evidence at trial. The Supreme Court has held that a motion for fees is untimely only if it causes "unfair surprise or prejudice" or violates a

local rule. *White v. New Hampshire*, 455 U.S. 445, 454, 102 S.Ct. 1162, 1167–68, 71 L.Ed.2d 325 (1982). Given that § 362(h) expressly provides that a debtor shall recover actual damages including attorney's fees, the defendant should not have been surprised by the motion for fees. Cadle also objected to the bankruptcy court's denial of the request for an evidentiary hearing before awarding attorneys' fees. A hearing is not required, however, unless there are "apparent factual disputes." *Henson v. Columbus Bank & Trust Co.*, 651 F.2d 320, 329 (5th Cir.1981). There is no indication from the record that such a factual dispute was before the bankruptcy court.

Cadle also opposes the award of fees because they were not "reasonably incurred" and because they did not bear a reasonable relationship to the damages awarded. *In re Stainton*, 139 B.R. 232 (9th Cir. BAP 1992). However, the Fifth Circuit has cautioned that "the district court should avoid placing undue emphasis on the amount recovered." *Von Clark v. Butler*, 916 F.2d 255, 260 (5th Cir.1990). This Court cannot say that the bankruptcy court abused its discretion in awarding the plaintiff attorney's fees in the amount of $4,800.

For all these reasons, the decision of the bankruptcy court is AFFIRMED in part and REVERSED in part and REMANDED for any further proceedings or orders that will be required by virtue of this Court's decision.