# United States Court of Appeals
## For the First Circuit

No. 17-1601

INTERNAL REVENUE SERVICE,

Defendant, Appellant,

v.

WILLIAM CHARLES MURPHY,

Plaintiff, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,*
and Stahl, Circuit Judge.

Peter Sklarew, with whom David A. Hubbert, Acting Assistant
Attorney General, Paul A. Allulis, Gilbert S. Rothernberg, Thomas
J. Clark, Attorneys, Tax Division, Department of Justice, and
Halsey B. Frank, United States Attorney, were on brief, for
appellant.
John H. Branson, with whom Branson Law Office, P.A., was on
brief, for appellee.

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

June 7, 2018

**STAHL**, **Circuit Judge**.  In this case, we need to determine whether an employee of the Internal Revenue Service ("IRS") "willfully violate[d]" an order from the bankruptcy court discharging the debts of debtor-taxpayer William C. Murphy, as that term is used in 26 U.S.C. § 7433(e).  After careful consideration, we hold that an employee of the IRS "willfully violates" a discharge order when the employee knows of the discharge order and takes an intentional action that violates the order.  Under § 7433(e), the IRS's good faith belief that it has a right to collect the purportedly discharged debts is not relevant to determining whether it "willfully violate[d]" the discharge order.  Because the IRS's actions in this case meet this standard, we affirm.

## I.

On October 13, 2005, Murphy filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Maine.  On Schedule E of his bankruptcy petition, Murphy listed his income tax obligations to the IRS for the years of 1993-1998, 2000, 2001, and 2003, as well as a 2003 tax obligation to the Maine Revenue Services.  Murphy's tax obligations were by far the largest liabilities he sought to discharge.  In his petition, Murphy listed total liabilities of $601,861.61, of which $546,161.61 were tax obligations.  On January 20, 2006, Assistant U.S. Attorney

Frederick Emery, Jr. ("AUSA Emery") filed an appearance on behalf of the IRS in the bankruptcy proceeding.

On February 14, 2006, the bankruptcy court granted Murphy a discharge. The discharge order, which appears to be a standard form, reads:

> It appearing that the debtor is entitled to a discharge,
>
> **IT IS ORDERED:**
>
> The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

Beneath the bankruptcy judge's signature, there is a notice that states, in bold and capital letters, "**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**" The back of the order provides an explanation of bankruptcy discharge in a Chapter 7 case, stating that "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged." The order lists "[s]ome of the common types of debts which are *not* discharged" and specifically notes that "[d]ebts for most taxes" are not discharged.

It does not appear that the IRS objected to Murphy's discharge prior to the bankruptcy court entering its discharge order. On February 16, 2006, the IRS received notice of the discharge order.

The IRS did not believe that the discharge relieved Murphy of his tax obligations. Rather, the IRS viewed Murphy's taxes as excepted from discharge under 11 U.S.C. § 523(a)(1)(C), which excepts from discharge any tax if "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Based on its earlier investigations into Murphy, the IRS believed that Murphy had willfully attempted to evade taxes during all of the years in question.

From February 2006 to February 2009, the IRS repeatedly informed Murphy that it did not view his tax obligations as discharged and that it planned to collect what it believed was owed. On February 20, 2009, the IRS issued levies against several insurance companies with which Murphy then did business in an attempt to collect on these tax obligations. Margurite Gagne, a revenue officer for the IRS, signed the levy notices sent to the insurance companies.

On August 14, 2009, Murphy filed an adversarial proceeding seeking a declaration that his tax obligations from 1993-1998, 2000, and 2001 had been discharged. In this proceeding, AUSA Emery represented the IRS. According to the IRS, AUSA Emery "took only minimal discovery in the case" and failed to submit evidence to the bankruptcy court that the IRS had developed during its investigation into Murphy's tax obligations. Instead, the IRS claims that AUSA Emery merely filed a summary of the IRS's

allegations of Murphy's tax evasion, without submitting any admissible evidence to support the allegations.

On June 22, 2010, the bankruptcy court granted summary judgment in Murphy's favor and declared that Murphy's tax obligations had been discharged. The bankruptcy court later noted that it granted summary judgment in large part because the IRS's opposition to summary judgment "fell far short of applicable substantive and procedural standards." Murphy v. IRS (In re Murphy), No. 05-22363, 2013 WL 6799251, at *2 (Bankr. D. Me. Dec. 20, 2013). The IRS did not appeal the bankruptcy court's 2010 summary judgment ruling.

Subsequently, AUSA Emery was diagnosed with frontotemporal dementia ("FTD"). According to the IRS, symptoms of FTD include "impairment of executive function, such as the cognitive skill of planning and organizing." Based on AUSA Emery's medical records and the opinions of three physicians, the IRS believes that AUSA Emery was already experiencing the symptoms of FTD in 2010.

In February 2011, Murphy filed a complaint against the IRS under § 7433(e), alleging that an employee of the IRS willfully violated the bankruptcy court's 2006 discharge order in February 2009 by issuing levies against the insurance companies with which he did business and thereby attempting to collect on his discharged

tax obligations.[1]  The IRS responded that it did not willfully violate the order because it reasonably believed his tax obligations were excepted from discharge under § 523(a)(1)(C) based on its investigation into his alleged tax evasion.

On December 20, 2013, the bankruptcy court granted summary judgment for Murphy for his § 7433(e) claim.  The court found that the term "willfully violates" has an established meaning in the context of violations of automatic stays and discharge orders issued in bankruptcy proceedings: a willful violation occurs "when, with knowledge of the discharge, [a creditor] intends to take an action, and that action is determined to be an attempt to collect a discharged debt."  In re Murphy, 2013 WL 6799251, at *7.  The court further found that the 2010 summary judgment ruling collaterally estopped the IRS from relitigating whether Murphy's tax obligations were discharged, whether the IRS knew they were discharged, and whether it took actions which violated the discharge order.  Id. at *8.

After the bankruptcy court denied the IRS's motion for reconsideration, the IRS appealed to the district court, which vacated the bankruptcy court's decision.  IRS v. Murphy, 564 B.R. 96, 98 (D. Me. 2016).  The district court concluded that the bankruptcy court should have considered AUSA Emery's impairment

---

[1]  Prior to filing his complaint, Murphy exhausted his administrative remedies as required by 26 U.S.C. § 7433(1).

- 7 -

before finding that the 2010 summary judgment ruling collaterally estopped the IRS from relitigating issues related to Murphy's discharge.  Id. at 112.

However, the district court agreed with the bankruptcy court's definition of "willfully violates" as used in § 7433(e). Id. at 106.  The district court found that, by 1998, the term had an established meaning in the context of violations of both automatic stays and discharge injunctions, and under this established meaning, a creditor's "good faith belief in a right to the property is not relevant to a determination of whether the violation was willful."  Id. (quoting Fleet Morg. Grp., Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999)).

On remand, the parties entered into a settlement agreement, whereby the IRS waived its collateral estoppel arguments and accepted that the 2010 summary judgment ruling conclusively determined that Murphy's tax obligations had been discharged.  The IRS reserved the right:

> for further appeal(s) only its arguments that that [sic] a debtor is not entitled to damages where a creditor's violation of the discharge reflects a reasonable belief that the debt involved was excepted from discharge, and/or that the "willfully violates" language in IRS § 7433(e) should be construed to permit the IRS to defend against liability for violating the discharge on the basis that its employee reasonably believed that the tax involved is excepted from discharge [hereinafter "the willfully violates issue"].

As part of the settlement, the IRS agreed to pay $175,000 as Murphy's damages once it had exhausted the reserved right to appeal if the appeal was lost. The settlement did not "resolve whether or not the deficiencies in in [sic] the United States' response to plaintiff's motion for summary judgment . . . were caused by any mental disability of the former Assistant United States Attorney at the time of the summary judgment proceedings." Based on this agreement, on January 4, 2017, the bankruptcy court entered final judgment against the United States, and the district court affirmed the judgment on appeal. The IRS timely appeals to this court.[2]

## II.

We are, at this stage, confronted solely with the bankruptcy court's resolution of a legal question, which we review de novo. Wilding v. CitiFinancial Consumer Fin. Servs., Inc., (In re Wilding), 475 F.3d 428, 430 (1st Cir. 2007). The parties' settlement agreement reserved for the IRS the right to appeal only the bankruptcy court's construction of the phrase "willfully violates" as used in § 7433(e).

---

[2] Section 7433(e) allows a debtor "to recover damages against the United States." (emphasis added). As the district court noted in its September 7, 2016 decision, it appears that the United States, and not the IRS, "is the real party in interest" in this case. Murphy, 564 B.R. at 98 n.1. "Like the appellant's brief, however, for simplicity" we will refer "to the appellant as 'the IRS.'" Id.

- 9 -

The IRS argues it does not "willfully violate" an automatic stay or discharge order if it has a good faith belief that its actions do not violate the bankruptcy court's order. In support of its position, the IRS presents two somewhat conflicting arguments. First, it claims that, before Congress enacted § 7433(e) in 1998, all creditors could raise a good faith defense to allegations that they willfully violated an automatic stay or discharge order. Second, it posits that even if most creditors could not raise a good faith defense, such a defense must be available to the IRS because § 7433(e) is a waiver of sovereign immunity that must be construed narrowly.

We begin our interpretation of § 7433(e) "where all such inquires must begin: with the language of the statute itself." Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 69 (2011) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)). Section 7433(e) provides that:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), . . . such taxpayer may petition the bankruptcy court to recover damages against the United States. (emphasis added).

Congress did not define "willfully" or the phrase "willfully violates" as used in § 7433(e). "[W]e attribute to words that are

not defined in the statute itself their ordinary usage, while keeping in mind that meaning can only be ascribed to statutory language if that language is taken in context." Brady v. Credit Recovery Co., Inc., 160 F.3d 64, 66 (1st Cir. 1998).

"The statutory term 'willfully' is a chameleon." United States v. Marshall, 753 F.3d 341, 345 (1st Cir. 2014). At a minimum, "willfully" "differentiates between deliberate and unwitting conduct." Bryan v. United States, 524 U.S. 184, 191 (1998); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) ("In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'"). In criminal law, it "typically refers to a culpable state of mind," such that a "willful violation" occurs only when a defendant "act[s] with knowledge that his conduct [is] unlawful." Bryan, 524 U.S. at 191-92. In contrast, "[c]ivil use of the term . . . typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 n.9 (2007).

In sum, as the Supreme Court has repeatedly stated, "'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears.'" Id. at 57 (quoting Bryan, 524 U.S. at 191); see also Ratzlaf v. United States, 510 U.S. 135, 141 (1994); United States v. Murdock, 290

- 11 -

U.S. 389, 394-95 (1933).  We look then to the context in which the word "willfully" appears in § 7433(e) to ascertain its meaning.

Section 7433(e) directly links the phrase "willfully violates" to two pre-existing sections of the Bankruptcy Code: section 362, which addresses automatic stays, and section 524, which addresses discharges and discharge orders.  "We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."  Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85 (1988).  This presumption is particularly appropriate when the new legislation invokes and builds off an existing statutory framework.  See, e.g., Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985).  We turn then to examine how courts had interpreted sections 362 and 524 of the Bankruptcy Code in the years before Congress enacted § 7433(e), looking first at violations of automatic stays and then turning to violations of discharge orders.

### III.

### A.

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot., 474 U.S. 494, 503 (1986) (quoting S. Rep. No 95-989, p. 54 (1978); H.R. Rep No. 95-595, p. 340 (1977)).  "The stay gives a 'breathing spell' to the debtor and stops 'all collection efforts, all harassment, and all foreclosure

actions.'"  Tringali v. Hathaway Mach. Co., Inc., 796 F.2d 553, 562 (1st Cir. 1986) (quoting H.R. Rep. No. 95-595, p. 340)).

Congress enacted then-section 362(h) of the Bankruptcy Code in 1984 to provide a private cause of action to "[a]n individual injured by any willful violation of a stay . . . ."  11 U.S.C. § 362(h) (West 1998); see Vahlsing v. Comm. Union Ins. Co., Inc., 928 F.2d 486, 489 n.1 (1st Cir. 1991).[3]  Before this provision was added to the Bankruptcy Code, some courts had imposed sanctions for willful violations of automatic stays "pursuant to the authority of bankruptcy courts to order parties in contempt."  Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1104 (2d Cir. 1990).  For this reason, the standard courts had used for evaluating whether a violation was willful was the standard that "governed contempt proceedings: a party generally would not have sanctions imposed . . . as long as it had acted without maliciousness and had had a good faith argument and belief that its actions did not violate the stay."  Id.  However, because § 362(h) created "an independent statutory basis" to hold violators of the automatic stay liable, courts began to apply "a standard less stringent than maliciousness or bad faith to govern the imposition of sanctions in bankruptcy cases."  Id.

---

[3]  A similar provision can be found today at 11 U.S.C. § 362(k)(1).

Prior to the enactment of § 7433(e), nearly all courts, and a majority of the circuits, had held that a willful violation of an automatic stay under § 362(h) occurs when an individual knows of the automatic stay and takes an intentional action that violates the automatic stay. See, e.g., Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996); Price v. United States (In re Price), 42 F.3d 1068, 1071 (7th Cir. 1994); In re Crysen/Montenay Energy Co., 902 F.2d at 1105; Cuffee v. Atl. Bus & Cmty. Corp. (In re Atl. Bus. & Cmty. Corp.), 901 F.2d 325, 329 (3d Cir. 1990); Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989); Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989); Budget Serv. Co. v. Better Homes of Am., 804 F.2d 289, 292-93 (4th Cir. 1986). These courts refused to incorporate a bad faith or maliciousness requirement, and in fact many specifically rejected good faith defenses. In re Crysen/Montenay Energy Co., 902 F.2d at 1104-05; In re Atl. Bus. & Cmty. Corp., 901 F.2d at 329; see also Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992) ("As it is undisputed that the IRS acted with knowledge of the bankruptcy filing, it necessarily follows that the government willfully violated the automatic stay." (internal quotation marks and citations omitted)).

Contemporary versions of leading bankruptcy treatises defined a "willful violation" of the automatic stay in the same

manner. See George M. Treister et al., Fundamentals of Bankruptcy Law (4th ed. 1996) § 5.01(c) ("A willful violation of the stay . . . does not require an intent to violate nor an awareness that the conduct was prohibited by the stay. It suffices that the violator knew of the existence of the stay, i.e., that he knew of the pendency of the bankruptcy, and that he intentionally did the violating act."); David G. Epstein et al., Bankruptcy (1992) § 3-33(c) ("A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay."). These contemporary sources further show that the phrase "willful violation" had a generally accepted meaning at the time Congress enacted § 7433(e). See Hamilton v. Lanning, 560 U.S. 505, 515-16 (2010) (considering circuit court decisions and contemporary bankruptcy treatises when interpreting undefined term in the Bankruptcy Code).

The IRS claims that before 1998, a few circuits, including this circuit, had adopted a "less stringent standard" that allowed alleged violators to raise a good faith defense. We disagree. The three circuit court decisions cited by the IRS do not provide an alternative definition of the phrase "willful violation." Nelson v. Taglienti (In re Nelson), 994 F.2d 42, 45 (1st Cir. 1993); Andrews Univ. v. Merchant (In re Merchant), 958

- 15 -

F.2d 738, 742 (6th Cir. 1992); Sherk v. Tex. Bankers Life & Loan Ins. Co. (In re Sherk), 918 F.2d 1170, 1178 (5th Cir. 1990) abrogated on other grounds by Taylor v. Freeland & Kronz, 503 U.S. 638, 643 (1992). Rather, these three decisions all appear to be limited resolutions of idiosyncratic fact patterns, with two arising in the context of domestic relations, see In re Nelson 994 F.2d at 45; In re Sherk, 918 F.2d at 1178, without a broader analysis of the meaning of "willful violation." Indeed, in In re Nelson, we avoided adopting a particular definition of "willful violation" by specifically limiting our holding to "the peculiar 'facts' of th[e] case." 994 F.2d at 45.[4]

A review of cases from within these circuits demonstrates that these three decisions did not announce an alternative "less stringent standard" for violations of automatic stays. Even after these decisions were issued, courts continued to apply the generally accepted definition of "willful violation" and rejected good faith defenses. See, e.g., Stmima Corp. v. Carrigg (In re Carrigg), 216 B.R. 303, 305 (B.A.P. 1st Cir. 1998); Shadduck v. Rodolakis, 221 B.R. 573, 577, 582-83 (D. Mass. 1998)

---

[4] As Murphy correctly notes in his brief, when we later adopted the generally accepted definition of "willful violation" for violations of automatic stays in Fleet Mortgage Group, Inc. v. Kaneb, we did not reference any departure from our prior precedent. In fact, we adopted the generally accepted definition because we "decline[d] to create a new standard for willfulness. Fleet Mortg. Grp., Inc., 196 F.3d at 268.

(finding willful violation of automatic stay by IRS despite its argument that it acted in good faith); In re Walker, 168 B.R. 114, 121 (E.D. La. 1994) ("Willfulness is not measured by specific intent to violate a court order . . . ."); In re Timbs, 178 B.R. 989, 997 (Bankr. E.D. Tenn. 1994) ("[A] good faith mistake of the law, a legitimate dispute as to legal rights or even good faith reliance on an attorney's advice do[es] not relieve a willful violator from the consequences of his act."); Smith v. GTE N. Inc. (In re Smith), 170 B.R. 111, 115, 117 (Bankr. N.D. Ohio 1994) (no good faith defense to willful violation of automatic stay).

The IRS also points to the Third Circuit's decision in University Medical Center v. Sullivan (In re University Medical Center), 973 F.2d 1065 (3d Cir. 1992) as an example of a court adopting a good faith defense for willful violations of automatic stays. It is true that, if read broadly, In re University Medical Center could allow a creditor to raise a good faith defense in any situation where existing law leads a creditor to reasonably believe "its actions to be in accord with the stay." Id. at 1088.[5] However, pre-1998 decisions from within the Third Circuit demonstrate that courts did not read In re University Medical

---

[5] One judge dissented from this part of In re University Medical Center, stating that he would have found a willful violation of the automatic stay because the Third Circuit had already "explicitly rejected good faith as a defense to 'willfulness.'" 973 F.2d at 1089 (Becker, J., concurring in part and dissenting in part).

Center so broadly. In a decision issued only eight months after In re University Medical Center, the Third Circuit itself reaffirmed that "[w]illlfulness does not require that the creditor intend to violate the automatic stay provision" and that "a creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h)." Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.), 977 F.2d 826, 829 (3d Cir. 1992) (citing In re Univ. Med. Ctr., 973 F.2d at 1087-88). And, in a case involving a taxpayer's suit against the IRS, the Bankruptcy Court for the Middle District of Pennsylvania rejected the IRS's argument that it relied in good faith on existing procedure set out in the IRS manual, concluding that "[e]ven a good faith belief that a party is not violating a stay is insufficient to escape liability." Weisberger v. United States (In re Weisberger), 205 B.R. 727, 731 (Bankr. M.D. Pa. 1997) (citing In re Univ. Med. Ctr., 973 F.2d at 1088).

In sum, we find the phrase "willful violation" had an established meaning in the context of violations of automatic stays as of 1998: a creditor willfully violated the automatic stay if it knew of the automatic stay and took an intentional action that violated the automatic stay. A good faith belief in a right to the property was not relevant to determining whether the creditor's violation was willful.

- 18 -

**B.**

A discharge order issued pursuant to § 524(a) generally "relieves a debtor from all pre-petition debt" and "permanently enjoins creditor actions to collect discharged debts." Bessette v. Acvo Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir. 2000). In this way, the discharge order is designed "to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006); see also Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996) (discussing how § 524 "embodies the 'fresh start' concept of the bankruptcy code").

By 1998, bankruptcy courts had relied on their equitable powers, granted by § 105(a), to sanction parties that willfully violated discharge orders, see Bessette, 230 F.3d at 445 (citing In re Hardy, 97 F.3d at 1389; In re Elias, 98 B.R. 332, 337 (N.D. Ill. 1989); Matthews v. United States (In re Matthews), 184 B.R. 594, 598 (Bankr. S.D. Ala. 1995)), and had begun to apply the same generally accepted definition of "willful violation" used for violations of automatic stays to violations of discharge orders. In In re Hardy, the Eleventh Circuit used the same willfulness definition when determining whether the IRS violated a debtor's discharge order. 97 F.3d at 1390. Other bankruptcy courts from outside the Eleventh Circuit followed its lead. See In re Hill,

- 19 -

222 B.R. 119, 122-23 (Bankr. N.D. Oh. 1998); In re Lovato, 203 B.R. 747, 749 (Bankr. D. Wyo. 1996); see also Behrens v. Woodhaven Ass'n, 87 B.R. 971, 976 (Bankr. N.D. Ill. 1988), aff'd, No. 83 B 4896, 1989 WL 47409 (N.D. Ill. Mar. 8, 1989) (finding willful violation of discharge order in case before In re Hardy when creditor sued debtor on a prepetition contract "with full knowledge of the Debtors' Chapter 7 case and discharge").

As Murphy concedes, fewer courts had addressed the standard for willful violations of discharge orders by 1998 than those that had discussed the meaning in the context of automatic stays and § 362(h). However, we find that when Congress enacted § 7433(e), it sought to apply the same generally accepted standard to violations of both automatic stays and discharge orders.

First, the plain language of § 7433(e) does not distinguish between the two orders. The object of the verb/adverb combination "willfully violates" in § 7433(e) is "any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) . . . ." Based on this structure, it would seem odd to imbue "willfully violates" with two different meanings, one for automatic stays and one for discharge orders.

Second, preexisting provisions of the Tax Code already allowed the IRS to raise its good faith belief, not as a defense to liability, but as a means of mitigating damages. Under 26 U.S.C. § 7430, a taxpayer who "prevails" in an action against the

IRS may recover reasonable attorney's fees.  However, there is an exception to this rule: a taxpayer will not be treated as the prevailing party "if the United States establishes that the position of the [IRS] in the proceeding was substantially justified."  26 U.S.C. § 7430(c)(4)(B).

Section 7430(c)(4)(B) was already in place in 1998, see 26 U.S.C. § 7430(c)(4)(B) (West 1998), and similar protections had been in place since 1982, see 26 U.S.C. § 7430(c)(2)(A) (West 1982) (party not a prevailing party against the United States unless it "establishes that the position of the United States in the civil proceeding was unreasonable"); Kaufman v. Egger, 758 F.2d 1, 3-4 (1st Cir. 1985).  As the bankruptcy court recognized below, § 7430(c)(4)(B) "acknowledges that liability under the Code may flow from good faith actions of the IRS, but that 'substantial justification' may mitigate the damages available to the aggrieved party."  In re Murphy, 2013 WL 6799251, at *9 (emphasis added); see also Kovacs v. United States, 739 F.3d 1020, 1026 (7th Cir. 2014) (discussing interplay between § 7430 and § 7433(e)).  While the IRS cannot rely on its good faith belief that it could collect from Murphy as a defense to liability, it can invoke its good faith belief to limit Murphy's recovery to his actual damages.[6]

---

[6] In this case, the IRS has stipulated to the amount of damages as a part of the settlement agreement.

For the foregoing reasons, we find that "willful violation" had an established meaning in 1998 and that Congress used that established meaning in § 7433(e) to set the standard for evaluating violations of both automatic stays and discharge orders.

**IV.**

Although we rely primarily on Congress's contemporary understanding of the phrase "willful violation" in construing § 7433(e), post-1998 decisions from this circuit and administrative materials from the IRS confirm that the generally accepted definition of willful violation should control.

Since 1998, this circuit has adopted the same definition of "willful violation" for violations of both automatic stays and discharge orders. In Fleet Mortgage Group, Inc. v. Kaneb, issued only one year after § 7433(e) was enacted, we explicitly adopted the generally accepted definition for violations of automatic stays. 196 F.3d at 268-69. Subsequently, in In re Pratt, we used the same standard to evaluate whether a violation of a discharge order was willful. 462 F.3d at 21. We stressed that Kaneb had "rejected the proposition that a stay violation could not be actionable (viz., 'willful') if the creditor had made a good faith mistake." Id. We then held that the creditor in Pratt willfully violated the discharge order because the creditor:

> ha[d] not suggested -- nor could it plausibly do so on these record facts -- that it did not know of the existence of the [debtors'] chapter 7 discharge, or that it did not intend to communicate to the [debtors] its refusal to release its lien in the automobile so that it could be junked.

Id.

In addition, the current version of the Internal Revenue Manual appears to adopt the same generally accepted definition for violations of automatic stays and discharge orders. The Manual defines "willful" as "an act that was committed intentionally or knowingly" and states that "[a] willful violation occurs when the Service has received notice of a voluntary bankruptcy filing or of the court's granting of a discharge, and the Service does not respond timely to stop its collection activities." I.R.M. 1.4.51.2.7.1 (Aug. 11, 2015). Although the Manual does not have the force and effect of law, we may rely on it to the extent we find it persuasive. See Heinz v. Cent. Laborers' Pension Fund, 303 F.3d 802, 812 n.17 (7th Cir. 2002) (citing United States v. Mead Corp., 533 U.S. 218 (2001)).

## V.

We turn then to the IRS's alternative argument: that even if there was a generally accepted definition of "willful violation," such a definition is too broad to be applied against the United States because § 7433(e) is a waiver of sovereign immunity and such waivers must be narrowly construed.

It is true that courts "construe any ambiguities in the scope of a waiver in favor of the sovereign." FAA v. Cooper, 566 U.S. 284, 291 (2012).  At the same time, "the sovereign immunity canon 'is a tool for interpreting the law' and . . . it does not 'displac[e] the other traditional tools of statutory construction.'"  Id. (quoting Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 589 (2008)).  We thus must "be careful not to be more stinting in the interpretation of the provision than its language requires," for "just as the courts should not construe a waiver of sovereign immunity more broadly than Congress intended, '[n]either, however, should we assume the authority to narrow the waiver that Congress intended.'"  Rakes v. United States, 442 F.3d 7, 19 n. 6 (1st Cir. 2006) (quoting United States v. Kubrick, 444 U.S. 111, 118 (1979)).

As discussed above, traditional interpretive tools lead us to conclude that the generally accepted definition of "willful violation" should apply to § 7433(e). By 1998, "willful violation" had an established meaning in the context of violations of automatic stays, and this established meaning had been applied to violations of discharge orders.  And, by 1998, the Tax Code already allowed the IRS to raise its good faith belief, not as a defense to liability, but as a means of limiting the taxpayer's recovery to the actual damages incurred.  Moreover, several of the decisions adopting the generally accepted definition of "willful violation"

- 24 -

before 1998 applied that definition against the government, despite the government's invocation of sovereign immunity. See In re Hardy, 97 F.3d at 1390; In re Jove Eng'g, Inc., 92 F.3d at 1555-56; In re Price, 42 F.3d at 1071; In re Pinkstaff, 974 F.2d at 115.

When considering the scope of a waiver of sovereign immunity, a "narrower temporal approach -- looking at congressional understanding of the enumerated sections at the time of the [enactment] -- is preferable," in part because "the approach adheres to the general principle that Congress is presumed to know the content of background law." United States v. Torres (In re Rivera Torres), 432 F.3d 20, 25 (1st Cir. 2005). By directly linking the phrase "willfully violates" in § 7433(e) to sections 362 and 524, Congress sought to use the generally accepted definition of the phrase "willful violation" in this context as the limit to its waiver of sovereign immunity. And, when we look past 1998, our subsequent caselaw and the administrative materials from the IRS itself both confirm that the generally accepted standard should control. For these reasons, we do not believe sovereign immunity requires us to adopt a more narrow definition of "willfully violates."

The IRS claims that if we apply the generally accepted definition of "willful violation" to § 7433(e), we are effectively forcing it to "seek a pre-enforcement determination from the

bankruptcy court about whether a tax debt has been discharged prior to initiating any post-discharge collection efforts," which would be both impractical and inconsistent with other provisions of the Bankruptcy Code.

We agree that "the IRS need not appear and object in the bankruptcy court to be excepted from [a] discharge under § 523(a)(1)(C)." Console v. Comm'r, 291 Fed. App'x 234, 237 (11th Cir. 2008). Nothing in our decision today forces the IRS to obtain a pre-enforcement determination before seeking to collect on tax obligations like Murphy's. The IRS remains free to "wait until the bankruptcy discharge is invoked as a defense to its collection efforts, and then prove a factual basis for the tax fraud exception in the collection proceedings." Id.

But, to the extent we find policy considerations relevant, we believe compelling policy justifications, embodied in § 7433(e), weigh against allowing the IRS to attempt to collect purportedly discharged debts without facing potential consequences. Discharge orders "ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." In re Pratt, 462 F.3d at 19. Congress enacted § 7433(e) to protect taxpayers who invoked the bankruptcy process, providing them with a means of recovering damages if an employee of the IRS willfully violates either the automatic stay or the

discharge order, the two foundational orders of the bankruptcy process.

If the IRS found the February 14, 2006 discharge order ambiguous, there was a variety of processes available to it to determine whether Murphy's tax obligations had been discharged. First, although not obligated to, the IRS could have forestalled any possible question about dischargeability by filing an objection in the bankruptcy court after it received notice of Murphy's petition but before Murphy received his discharge. See Console, 291 Fed. App'x at 237; see also Korte v. United States (In re Korte), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001). Second, the IRS could have filed an adversary proceeding before it began its collection efforts to obtain a determination of whether the tax obligations were covered by the discharge order. See Hassell v. Comm'r, 92 T.C.M. (CCH) 273, 2006 WL 2602032, at *3 (2006); United States v. Acker (In re Acker), No. 09-41961, 2010 WL 3547221, at *1 (Bankr. E.D. Tex. Sept. 7, 2010).

Alternatively, the IRS could, as it did, attempt to collect from Murphy and thereby force him to return to the bankruptcy court to obtain a determination that the debts had been discharged. And, of course, if AUSA Emery had adequately supported the opposition for summary judgment on dischargeability with admissible evidence back in 2010, the bankruptcy court may well

have ruled in the IRS's favor and brought this case to an end years ago, with the IRS facing no penalty for its collection efforts.

Because of the parties' settlement agreement, the factual issues surrounding Murphy's alleged tax evasion and AUSA Emery's cognitive disability are no longer relevant to this case. We agree with the dissent that no judge has found that Murphy did not evade taxes, and we take seriously the allegations against Murphy that the IRS continues to make in its filings.[7]

If we were to adopt the IRS's definition, we would render § 7433(e) a near nullity. As the bankruptcy court ably described it below:

> [t]he IRS's position is that, as far as tax collection and § 523(a)(1)(C) goes, it retains the authority to make up its mind whether tax obligations are discharged, that it may act unilaterally on the basis of its conclusions, and that it encounters no risk for doing so, as long as it has a "good faith" or "reasonable belief" for its conclusion.

---

[7] Based on the odd procedural history of this case, no factfinder has yet resolved whether AUSA Emery's disability caused him to file the deficient opposition to summary judgment. The district court's 2016 order remanded the case back to the bankruptcy court in part so the bankruptcy court could resolve these issues and thereby determine whether application of offensive collateral estoppel against the IRS was proper. Murphy, 564 B.R. at 111-12. Ultimately, the parties left the issue open in their settlement, in part because of "the desire to avoid not only their respective risk of loss on the determination of whether offensive collateral estoppel should apply, but also the potential for the determination to entail substantial litigating expenses (including possible expert medical testimony) and substantial delay."

*In re Murphy*, 2013 WL 6799251, at *6.

Under this view, it is hard to imagine a case where a taxpayer could ever collect against the government for a violation of the automatic stay or discharge order. Although the dissent forcefully argues that the sovereign immunity canon compels this narrow definition of "willfully violates," we ultimately find that the dissent's position "presents an unduly restrictiv[e] reading of the congressional waiver of sovereign immunity, rather than a realistic assessment of legislative intent." *Franconia Assocs.* v. *United States*, 536 U.S. 129, 145 (2002) (alteration in original) (internal quotation marks and citations omitted).

## VI.

The IRS had several opportunities to obtain a judicial determination that Murphy's tax obligations were excepted from discharge. The bankruptcy court determined, based on the evidence presented to it, that Murphy's tax obligations were not excepted from discharge. In such cases where a taxpayer's debt is found to be discharged, Congress has allowed the taxpayer to pursue an action against the United States under § 7433(e) if an employee of the IRS knew of the discharge order and took an intentional action that violated the order.

For the foregoing reasons, we affirm.

**-Dissenting Opinion Follows-**

**LYNCH**, **Circuit Judge**, **dissenting.** With the greatest respect for my esteemed colleagues, I think the majority gets this one wrong. To the best of my knowledge, this is the first opinion by a circuit court of appeals construing the phrase "willfully violates" in 26 U.S.C. § 7433(e), enacted in 1998, and, importantly, the first to deprive the United States, through the IRS, of its sovereign immunity under that statute even where the United States acted on a reasonable and good faith belief that a discharge injunction did not apply to its collection efforts against a tax debtor.

To be clear, there is no explicit waiver by Congress of sovereign immunity under these circumstances. The majority attempts to infer such a waiver. To the contrary, the Bankruptcy Code itself provides that a discharge injunction does not apply to a tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). And the IRS here says it believed in good faith that the tax debts it attempted to collect fell into this exception.

Further, the plain meaning of the phrase "willfully violates," Supreme Court precedent interpreting the term "willful" and the phrase "willful violation," the structure of the statutory scheme, and the sovereign immunity canon all point toward § 7433(e) not stripping the IRS of a reasonable good faith defense. Because

the majority opinion deprives the United States of sovereign immunity and does so for reasons which I conclude are inconsistent with Congressional intent, Supreme Court precedent, and with rules of construction, I lay out the basis for my dissent.

A.   Sovereign Immunity

Sovereign immunity is waived only if Congress clearly intended as much.  See F.A.A. v. Cooper, 566 U.S. 284, 290 (2012). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)).

"[A]ny ambiguities in the scope of a waiver" are to be construed "in favor of the sovereign."  Cooper, 566 U.S. at 291. "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government."  Id. at 290-91.  Consequently, we must determine whether § 7433(e) can be plausibly interpreted not to authorize money damages against the United States where the IRS acted reasonably and in good faith to collect a tax debt.  The statute can and should be so interpreted.  In my view, such an interpretation is far more than plausible.

There is no expression by Congress here of a waiver of sovereign immunity where the IRS acts reasonably and in good faith to collect tax debts it reasonably believes do not fall within the

scope of a discharge injunction.  When Congress intends to waive sovereign immunity, it knows how to do so explicitly.  See, e.g., 11 U.S.C. § 106(a) ("Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following [enumerated provisions of the Bankruptcy Code]."); 26 U.S.C. 7433(a) (creating a cause of action for damages against the United States "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title").  Congress did not do so here and it easily could have.[8]

---

[8]    Franconia Assocs. v. United States, 536 U.S. 129 (2002), is cited by the majority, but it has nothing to do with the issues presented here.  The limitation principle referred to there was not about sovereign immunity at all, but about whether a special accrual rule from a statute of limitations should be carved out for the government when there is a repudiation of a Farmer's Home Administration loan contract.  See id. at 145.  It is true that Franconia cites to language about sovereign immunity in two other cases, but once again those cases assist the dissent.  Irwin involved an explicit statutory waiver of immunity and the question presented was whether the doctrine of equitable tolling fell within that exception.  498 U.S. at 95.  The same is true of the question presented in Bowen v. City of New York, 476 U.S. 467 (1986), where Congress had explicitly waived sovereign immunity as to certain social security suits and the issue was whether the waiver included recognition of the equitable tolling doctrine.  See id. at 479-80.

B.    Text of 26 U.S.C. § 7433(e)

As a matter of statutory construction, we must first look the text of § 7433(e).  See SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018); Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 168 (2014).  Section 7433(e) states that, "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] willfully violates any provision of section 362 . . . or 524 . . . of title 11 . . . [,] such taxpayer may petition the bankruptcy court to recover damages against the United States."  (emphasis added).

This case turns on how we interpret the phrase "willfully violates."  "Willfully" modifies "violates," and the ordinary meaning of "willful," which controls where the term is not defined in the statute, see Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014), is "deliberate" or "on purpose."  E.g., Wilful, Oxford English Dictionary Online, http://www.oed.com/view/Entry/229028 (last visited May 25, 2018) ("Done on purpose or wittingly; purposed, deliberate, intentional; not accidental or casual. Chiefly, now always, in bad sense, of an action either evil in itself or blameworthy in the particular case" (emphasis added)); Willful, Merriam-Webster's Dictionary Online, https://www.merriam-webster.com/dictionary/willful (last visited May 25, 2018) ("done deliberately").  So the IRS has to

deliberately violate a discharge injunction to be liable under § 7433(e).

Applying these definitions of "willful" here, the statute should (and certainly can plausibly) be read to provide the United States with a good faith defense. "Willfully" requires that the violation be done "deliberately" or "knowingly." In this case, that would mean an IRS employee must have violated the discharge injunction deliberately, with knowledge that he was violating the injunction.[9]

Under other provisions of the Bankruptcy Code, no creditor, whether the IRS or another, necessarily violates a discharge injunction merely by trying to collect a debt while aware of the injunction. See, e.g., United States v. Ellsworth (In re Ellsworth), 158 B.R. 856, 858 (Bankr. M.D. Fl. 1993). Rather, a discharge injunction is violated only if the particular debt that the creditor is trying to collect was actually discharged as a result of the injunction. But IRS debts receive special treatment. Section 523(a) lists several types of debts that are not dischargeable, and that list includes tax debts "with respect to which the debtor . . . willfully attempted . . . to evade or defeat such tax." When the IRS, knowing of a discharge injunction, makes tax debt collection efforts, and it has reasonably and in good

---

[9]    There is no claim the IRS acted recklessly.

faith, even if erroneously, determined that the tax debt was not dischargeable and thus was not covered by the discharge injunction, the IRS's "violation" was not done deliberately merely because its assessment of the effect of the injunction was incorrect.

No judge in this case has even held that the debtor did not in fact make "a fraudulent return or willfully attempt in any manner to evade or defeat such tax." Id. § 523(a)(1)(C). At most, the initial bankruptcy judge held that the IRS attorney (who the IRS maintains had been made incompetent by the onset of dementia) did not "present [the] evidentiary quality material" required to prove tax fraud. The IRS also maintains that the disabled attorney also did not give notice to the IRS of his actions in the case, leaving the IRS unaware of his incapacity and his failure to provide adequate evidence. The extent and timing of the attorney's disability is relevant to whether an IRS employee "willfully violate[d]" the discharge injunction under the plain meaning of that phrase. Yet the majority's holding would render these factors irrelevant.

C.    Pre-Section-7433(e) Case Law

        1.    Supreme Court Precedent

        The majority reasons that the key to this case is found in the premise that Congress is presumed to know how the law has been interpreted by the courts, and then to legislate against that

backdrop.  See Hood, 571 U.S. at 169; Bragdon v. Abbott, 524 U.S. 624, 644-45 (1998).

The majority, though, in my view, misapplies the premise.  I disagree that we should interpret § 7433(e) based on how some circuit courts had interpreted the phrase "willful violation" in the context of a different and older statute, 11 U.S.C. § 362(h).  We cannot ignore the decades of Supreme Court case law interpreting the term "willful" and the phrase "willful violation."  Congress, after all, did not simply say "violates"; § 7433(e) modifies and restricts the word "violates" with the word "willful."

If we are to "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts," Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 185 (1988), then we should presume here that Congress knew about clearly established Supreme Court precedent.  I would have thought that Supreme Court law would be far more relevant than the general and not uniform pronouncement of some circuits.

Congress would have been particularly aware of how the Supreme Court interpreted the term "willful" in Kawaauhau v. Geiger, 523 U.S. 57 (1998), which was decided just months before § 7433(e) was passed.  Kawaauhau was a natural place to look: it pertained to 11 U.S.C. § 523, a part of the Bankruptcy Code that lists the types of debts that cannot be discharged.  See Kawaauhau,

- 36 -

523 U.S. at 59. Section 523 is a statute of intrinsic importance when determining whether a discharge injunction was willfully violated. In Kawaauhau, the Court determined that "willful . . . injury" included only acts that were specifically intended to cause injury, not all intentional acts that resulted in injury. 523 U.S. at 61. The Court explained its holding as follows:

> The word "willful" . . . modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."

Id. That logic maps directly onto the language of § 7433(e). "Willfully" modifies "violates," so liability requires a deliberate or intentional "violation." Had Congress intended otherwise, it would have said so clearly. We should assume Congress knew about this latest Supreme Court interpretation of similar language in the bankruptcy context when it was drafting § 7433(e).

Moreover, the Supreme Court, consistent with Kawaauhau, had long held that "willful violation" requires that the violator "knew or showed reckless disregard for the matter of whether its conduct was prohibited." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128-29 (1985). The Supreme Court, before § 7433(e)

- 37 -

was enacted, also had repeatedly held that the term "willful" requires more than negligence. See Bryan v. United States, 524 U.S. 184, 196 (1998) (holding that a criminal statute's use of "willful" required "knowledge that the conduct is unlawful"); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) ("The word 'willful' is widely used in the law, and . . . is generally understood to refer to conduct that is not merely negligent."); United States v. Ill. Cent. R. Co., 303 U.S. 239, 243 (1938) (holding that "[w]illfully . . . means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements." (quoting St. Louis & S.F.R. Co. v. United States, 169 F. 69, 71 (8th Cir. 1909))); United States v. Murdock, 290 U.S. 389, 395 (1933) ("The word ["willfully"] is . . . employed to characterize a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act." (citations omitted)). These cases[10] mean that the phrase "willfully violates" in § 7433(e) certainly requires more than mere knowledge of a discharge injunction in order to have a

---

[10] The Supreme Court in Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007), stated that "where willfulness is a statutory condition of civil liability," that term typically covers "knowing" and "reckless" violations. Id. at 57.

violation of that injunction, especially when the IRS has a reasonable good faith belief that the injunction does not apply.

2.    Circuit Precedent Was Neither Clear nor Unanimous

Even if we could look at circuit and bankruptcy court interpretations of other statutes, 11 U.S.C. §§ 362(h) and 524, to interpret the phrase "willfully violates," the definition of that phrase must have been clearly established and "settled" at the time § 7433(e) was enacted in order for the majority's argument to succeed. Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1386 (2015) (declining to apply the prior-construction canon because, inter alia, the courts' interpretation of the pre-existing statutory provision was not "settled" (quoting Bragdon, 524 U.S. at 645)); see also United States v. Torres (In re Rivera Torres), 432 F.3d 20, 26 (1st Cir. 2005).

The Supreme Court has only applied a judicial interpretation of a pre-existing statute to a new statute where that interpretation was unanimous or very close to it. See Bragdon, 524 U.S. at 644-45 (holding that, because "[e]very court" that had interpreted the preexisting statute was in agreement, "the new statute should be construed in light of this unwavering line of administrative and judicial interpretation" (emphasis added)); Lorillard v. Pons, 434 U.S. 575, 580 (1978) (applying the prior-construction canon where "every court" to interpret the pre-existing statute had been in agreement).

- 39 -

I do not see the pre-§ 7433(e) consensus among those courts that the majority does. Before the enactment of § 7433(e), seven circuits had stated that the phrase "willful violation" in § 362(h), which concerns stays of collection activity once a debtor files for bankruptcy, applied whenever a creditor knew of an automatic stay and violated it.[11] However, three circuits had held that more was required in order for the violation of the stay to be "willful." Seven out of ten is a circuit split, not a clear consensus.[12] And a stay is not a discharge injunction, and "creditor" encompasses far more than the IRS.

---

[11] The majority also references Hardy v. IRS, (In re Hardy), 97 F.3d 1384 (11th Cir. 1996), which interpreted the phrase "willful violation" in the § 524 context. That case is of little help because it was the only circuit case addressing that definition in the § 524 context when § 7433(e) was passed, meaning the § 524 case law was not "clearly established." In re Rivera Torres, 432 F.3d at 26.

[12] In order to support its argument that Congress would have understood "willfully violates" to cover situations where the IRS acted reasonably and in good faith, the majority looks to circuit case law post-dating the enactment of § 7433(e). Cases from the 2000s do not help us determine how Congress would have understood a phrase in 1998. Even so, there is no consensus on the definition of "willful" in the § 524 discharge injunction context. The Ninth Circuit has held that a good faith belief that one is not violating a discharge injunction is sufficient to show that there was no "willful violation" of the discharge injunction. See Lorenzen v. Taggert (In re Taggert), 888 F.3d 438, 444 (9th Cir. 2018). Indeed, the Ninth Circuit does not even impose a reasonableness requirement. Id. ("the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable" (emphasis added) (citing Corning v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1009 n.14 (9th Cir. 2006))).

- 40 -

As I read the law of the First Circuit, it specifically allowed for reasonable good faith as a defense to a claimed willful violation of a stay. See Nelson v. Taglienti (In re Nelson), 994 F.2d 42, 45 (1st Cir. 1993); see also Vahlsing v. Commercial Union Ins. Co., 928 F.2d 486, 490 (1st Cir. 1991). In Vahlsing, this court noted that "[v]iolation of [a] stay . . . is not a strict liability tort." 928 F.2d at 490. In In re Nelson, this court went further, holding that a bankruptcy stay was not willfully violated because, inter alia, "it was reasonable for [the creditor] to believe that the property was not part of the bankruptcy estate." 994 F.2d at 45. In re Nelson was still controlling law when § 7433(e) was enacted in 1998.

Other circuits had also held that a colorable legal argument of no violation was sufficient to show that a violation of an automatic stay was not willful. The Fifth Circuit had held that a creditor did not "willfully violate[] the automatic stay" because her legal position that the stay did not apply was "arguable." Sherk v. Tex. Bankers Life & Loan Ins. Co. (In re Sherk), 918 F.2d 1170, 1178 (5th Cir. 1990) abrogated on other grounds by Taylor v. Freeland & Kronz, 503 U.S. 638, 643 (1992).

---

The same is true of the majority's reference to the Internal Revenue Manual. A citation to the current Manual does not tell us how Congress would have interpreted "willfully violates" in 1998. As the majority concedes, the Manual does not even have the force of law.

The Sixth Circuit took a similar position in Andrews University v. Merchant (In re Merchant), 958 F.2d 738 (6th Cir. 1992), finding that a university's violation of an automatic stay "was not willful" without holding that the university did not know of the stay. Id. at 740, 742.

The majority posits that Congress would have ignored these three circuit court opinions when drafting § 7433(e), but provides no credible reason why.[13] The majority dismisses these cases as "limited resolutions of idiosyncratic fact patterns," but the holdings on these fact patterns establish the very point that proves the majority wrong. When § 7433(e) was passed in 1998, three circuits had held that a colorable legal position was

---

[13] The majority attempts to deny the existence of this circuit split by pointing to a handful of lower and Article I court cases that are not in accordance with the precedent of their respective circuits. These cannot minimize the circuit split. The First, Fifth, and Sixth Circuits had held that mere knowledge of a stay was insufficient to show a "willful violation."

The majority similarly argues that Congress would have ignored these cases when drafting § 7433(e) because they lack "a broader analysis of the meaning of 'willful violation.'" First, many of the circuit cases adopting the majority's favored definition of "willful violation" also provide little analysis. See, e.g., Price v. United States (In re Price), 42 F.3d 1068, 1071 (7th Cir. 1994); Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989). Second, that the analysis may have been limited in these three cases is irrelevant. Three circuits had held that a colorable legal argument was sufficient to show that a violation was not "willful" under § 362(h). That is enough to find that the meaning of "willful violation" was not clearly established, regardless of how much analysis the three circuits provided.

sufficient to show that a violation of a stay was not willful. These decisions never said that their interpretation of "willful violation" in § 362(h) was affected by the unusual nature of the facts presented. Bankruptcy cases -- including this one -- often involve unusual facts; the peculiarity of the facts in a couple of the cases involved in the pre-1998 circuit split does not mean that Congress would have interpreted those cases differently or seen a consensus where there was none. The majority argues that In re Nelson was limited to its facts but, even if that were true, its holding that a reasonable legal argument was sufficient to render a violation not willful is irreconcilable with the majority's holding in this case.

D. Congress's Tax Collection Scheme Is Inconsistent with the Majority View

The statutory context for the IRS tax collection scheme, which we are required to consider, see SAS Inst., 138 S. Ct. at 1355, is also inconsistent with the majority view. I am concerned that that majority holding will cause damage to the tax collection scheme. The practical effect of the decision is to impose damages on the IRS when it initiates collection efforts in the face of a discharge injunction that the IRS reasonably and in good faith determines does not apply. The opinion effectively requires the IRS to first go to court and prove its case that the taxes are

- 43 -

owed before instituting any collection efforts. But Congress has decided to the contrary.

Congress specifically chose <u>not</u> to require the IRS to first obtain a judicial determination that an exception to discharge applies before engaging in tax debt collection efforts. Section 523(a) holds that certain types of debts, including tax debts "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax,"[14] are excepted from a discharge injunction. <u>Id.</u> § 523(a)(1)(C). By contrast, § 523(c)(1) specifies that three particular types of debts are automatically deemed included in a discharge injunction unless or until the creditor initiates a post-injunction adversarial proceeding that yields a judicial determination that the debt is excepted from discharge. Significantly, tax debts are not listed in § 523(c)(1). This means that Congress chose not to require that the IRS seek a pre-collection determination from the bankruptcy court that tax debts are excepted from a discharge injunction. Given that Congress created this exception to

---

[14] The issue of dischargeability of debts resulting from a debtor's dishonesty is important, as evidenced by the grant of certiorari in <u>Appling</u> v. <u>Lamar, Archer & Cofrin, LLP</u> (<u>In re Appling</u>), 848 F.3d 953 (11th Cir. 2017), <u>cert. granted</u>, 138 S. Ct. 743 (Jan. 12, 2018) (No. 16-1215). <u>See</u> <u>id.</u> at 955 (holding that a debt was not excepted from discharge under § 523(a)(2) because the debtor's misrepresentation about a future cash flow amounted to a misrepresentation about his financial condition and was not made in writing).

discharge and did not require the IRS to seek a pre-collection determination that tax debts are not dischargeable, there is no reason to say that the IRS should incur the risk of having damages found against it even if it acted on a reasonable and good faith belief that the tax debts were excepted from discharge.[15]

If Congress had intended to require the IRS to seek a pre-collection determination from the bankruptcy court or had intended for the IRS to incur a risk of damages under these circumstances even when it acts reasonably, it would have said so directly. Epic Sys. Corp. v. Lewis, Nos. 16-285, 16-300, 16-307, slip op. at 15 (U.S. May 21, 2018) ("Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes.'" (quoting Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457, 468 (2001))). Yet the majority has, in effect, imposed such a requirement. In doing so, the majority reaches a result that Congress contemplated and explicitly rejected.

---

[15] The majority argues that Congress clearly used the phrase "willfully violates" in order to "directly link" § 7433(e) to the "willful violation" standard used in § 362(h). But the phrase "willfully violates" relates just as directly to Supreme Court precedent interpreting similar phrases. In any case, a "direct link" to the standard used for § 362(h) is only helpful to the majority to the extent there was a consensus around that standard when § 7433(e) was passed, and there was none.

I also disagree with the majority's argument that the existence of 26 U.S.C. § 7430(c)(4)(B) in 1998 shows that Congress intended for § 7433(e) to waive sovereign immunity even where the IRS has a reasonable and good faith belief that the debt was not discharged. Section 7430 is concerned with an altogether different topic. It allows a "prevailing party" in litigation against the IRS to recover "reasonable litigation costs incurred in connection with such court proceeding," under certain circumstances. Id. at § 7430(a)(2). And even under § 7430, a victorious taxpayer is not treated as a "prevailing party," and so is unable to recover litigation costs against the IRS, if the IRS's litigation position was "substantially justified." Id. at § 7430(c)(4)(B).

Contrary to the majority's assertion, the IRS cannot mitigate the damages it is forced to pay to the taxpayer under the majority's interpretation of § 7433(e) by showing a substantial justification for its position under § 7430(c)(4)(B). Section 7430 only covers "litigation and administrative costs," so having a substantially justified position does not allow the IRS to mitigate the § 7433(e) damages the majority would force it to pay. Parties are routinely required to cover their own costs; § 7430's cost-shifting provision has no bearing on § 7433(e) damages.

It is not true, as the majority posits, that adopting the IRS's definition of "willfully violates" "would render § 7433(e) a near nullity." Adopting the IRS's definition would

only free it to collect tax debts that it reasonably believes are not covered by a discharge injunction or automatic stay.  If the IRS were to collect other types of tax debts not exempted from discharge by § 523, that would present a different issue under § 7433(e), which is not before us.

The majority appears skeptical that courts would ever find that the IRS has violated the reasonableness requirement. Several bodies of law instruct courts to inquire into the reasonableness of an actor's behavior, including torts, see, e.g., Restatement (Second) of Torts § 282 (1965), and administrative law, see, e.g., Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).  The use of a reasonableness standard in those areas does not render the relevant statutes near nullities.

In my view, the intent of Congress is clearly not to waive sovereign immunity in these circumstances.  But even if there were ambiguity, that ambiguity itself would require that we find no waiver of sovereign immunity.  I respectfully dissent.